**CITY OF PITTSBURGH, and UPMC Benefit Management Services, Inc., Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (WRIGHT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 31, 2014.

Decided May 1, 2014.

Michael B. Dodd, Pittsburgh, for petitioners.

Herbert B. Cohen, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, President Judge, and LEAVITT, Judge and COLINS, Senior Judge.

OPINION BY Judge LEAVITT.

The City of Pittsburgh (Employer) and UPMC Benefit Management Services, Inc. petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) setting aside Employer's recoupment of an overpayment of workers' compensation benefits. For a period of approximately two months, Employer paid John Wright (Claimant) total disability workers' compensation without an offset for the disability pension Employer also paid Claimant. Employer recouped the overpayment of workers' compensation by reducing Claimant's weekly disability payment by $100 until it was repaid. The Board set aside the recoupment because Employer did not give Claimant the official form for reporting his pension income before effecting the recoupment. The Workers' Compensation Judge (WCJ) held that Claimant waived the issue of the reporting form and that, in any case, Employer did not need to wait for Claimant to report his pension before effecting an offset. Employer was fully aware of Claimant's pension from the City. However, the WCJ set aside the recoupment for a different reason, namely, that Employer failed to prove that the recoupment did not prejudice Claimant. Concluding that both the Board and the WCJ erred, we reverse.

## Background

Claimant worked for the City of Pittsburgh for many years as a firefighter, most recently as Captain. On February 4, 2004, he slipped on ice while fighting a fire and injured his right knee. At the time he was injured, Claimant annually earned between $70,000 and $80,000. Employer, which is self-insured for workers' compensation, accepted liability for the injury and paid Claimant Heart and Lung benefits equal to his full salary for over a year after the injury.[1]

On May 30, 2005, Claimant elected to take a disability pension. This ended his Heart and Lung benefits and replaced them with workers' compensation benefits because his disability was of an indefinite duration. On June 13, 2005, Employer issued a notice of compensation payable providing for payment of workers' compensation wage loss benefits in the amount of $690 per week beginning May 30, 2005, the maximum rate for any claimant injured in 2004. As of May 30, 2005, Claimant began receiving $3,568 per month in pension ben-

1. Under what is commonly referred to as the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§ 637–638, firemen who are temporarily unable to perform their duties because of a work injury are entitled to receive their full salary.

efits and $690 per week in workers' compensation benefits. Claimant received his first pension check from Employer at the end of June. Employer mailed the first workers' compensation check on June 24th.

On August 5, 2005, Employer issued Form LIBC–761, "Notice of Workers' Compensation Benefit Offset," to Claimant, stating that as of August 8, 2005, his compensation would be reduced to $555.76 weekly because Employer was taking an offset of $134.24. This offset represented the portion of Claimant's disability pension that was funded by Employer. Reproduced Record at 224a–225a (R.R. ——). Employer also informed Claimant that Employer had overpaid Claimant disability compensation for the period from May 30, 2005, to August 8, 2005, because the payments for those weeks did not include the offset. The overpayment totaled $1,783.48. Employer advised Claimant that $100 would be deducted from Claimant's weekly disability payment until the overpayment of $1,783.48 was paid back to Employer. The offset and $100 deduction reduced Claimant's weekly disability payment to $455.76 from August 8, 2005, through January 8, 2006. At that point, Employer then began paying Claimant $555.76 per week in workers' compensation, and has continued to do so.

On December 29, 2008, Claimant filed a petition to review compensation offset, alleging that Employer's offset calculation was wrong. The petition also challenged Employer's entitlement to any recoupment, asserting that the $100 deduction would cause a financial hardship. Employer filed an answer denying that its offset calculation was incorrect or that its recoupment was in any way improper.

The matter was assigned to a WCJ.[2] Employer's evidence consisted of expert testimony establishing the amount of Claimant's pension contributed by Employer. Claimant rebutted this evidence with his own expert and testimony about how the offset affected his personal finances. The record established that Claimant's disability pension totals $3,568 each month, or $42,816 per year. Since January 2006, after Employer's offset and recoupment, Claimant has collected $555.76 in weekly workers' compensation disability, or $28,899.52 per year. Claimant's yearly income from his disability pension and workers' compensation is $71,715.52.

Claimant testified that he is the family's sole breadwinner, and he and his wife based their household budget on Claimant's pre-injury earnings. Even full Heart and Lung benefits, i.e., his full salary, required an adjustment to that budget because Claimant lost the opportunity for the overtime he used to earn before his injury. Their household budget was further constrained by the change to his disability pension supplemented by workers' compensation. Employer's recoupment of the overpayment of compensation required Claimant to remove his son from a private high school, which he attended for one semester, and place him in public school. The recoupment came at a difficult time because Claimant was also helping his two daughters who were in college. The family did not want to eat "beans every day," which would have been necessary in order to pay for his son's private school tuition. R.R. 212a. When the recoupment was completed, things became "easier." R.R. 213a. However, Claimant did not return his son to private school. Claimant ac-

---

**2.** Numerous other Pittsburgh firefighters filed petitions to review benefit offset, which were assigned to two different WCJs to conduct joint hearings because the issues were similar. The WCJs then issued individual decisions for each firefighter.

knowledged that he did not contact Employer to challenge or complain about the $100 weekly recoupment after receiving Employer's notice in August 2005.

The WCJ credited Employer's actuarial evidence and expert and found Employer's offset calculations to be accurate. The WCJ then addressed the other issues raised by Employer and Claimant.

Claimant first argued that Employer was collaterally estopped from presenting evidence on whether it had correctly calculated Claimant's offset for his disability. The WCJ held that Employer was not collaterally estopped because the prior litigation cited by Claimant had involved different firefighters and, therefore, different factual issues.

Claimant next argued that Employer was not entitled to any offset because it did not provide him with Form LIBC–756, entitled "Employee's Report of Benefits for Offsets," before notifying him of its intention to take an offset. The WCJ found that by not raising that issue while the record was open, Claimant waived it. In any case, the WCJ determined that Employer was not required to issue the Form LIBC–756 to Claimant before taking an offset for Claimant's pension because Employer knew about the pension and, thus, did not need Claimant's report. The WCJ reasoned:

> Even if the issue had not been waived, the undersigned cannot perceive that the employer's tender of a Form 756 to a worker is a condition precedent to its later assertion of a credit. The right to a set-off is established by statute (via an Act 57 of 1996 amendment), and no condition upon taking the credit is established via that amendment. Nor do the Act 57 regulations state that tender of the form is a condition precedent.

WCJ Decision, July 30, 2010, at 12; Conclusion of Law No. 5.

Claimant argued, lastly, that Employer was barred from recouping the overpayment of workers' compensation disability because it caused a financial hardship. The WCJ agreed. Citing *Maxim Crane Works v. Workers' Compensation Appeal Board (Solano)*, 931 A.2d 816 (Pa.Cmwlth. 2007), the WCJ concluded that whenever an employer wishes to take a retrospective pension offset, there is a "presumption of prejudice" to the claimant that the employer must rebut in order to recoup an overpayment. Accepting Claimant's testimony as credible, the WCJ concluded that Claimant was prejudiced by Employer's retrospective offset.

For its part, Employer argued that because Claimant failed to challenge the retrospective offset before Employer had actually completed the recoupment, Claimant was barred by the doctrine of laches from asserting a financial hardship. The WCJ rejected this argument and held that Employer did not make out a case for application of the doctrine of laches.

The WCJ granted, in part, Claimant's petition for review offset. The WCJ allowed Employer the ongoing pension offset based upon its calculations of the amount it contributed to the pension. However, the WCJ disallowed Employer's recoupment of its overpayment and ordered Employer to reimburse Claimant the full amount of the recoupment.[3]

---

**3.** Thereafter the WCJ issued an amended order for all firefighter cases he had been assigned, including the instant one, clarifying that Employer was to apply the updated pension offset calculations it had submitted into evidence, which in some cases was different than the offset amounts found in the Form LIBC–761 Notice of Offset. For any case where the updated calculations decreased the offset amount, the WCJ ordered Employer to reimburse the claimants the amount they had been underpaid, with interest. The WCJ reaf-

Claimant and Employer appealed to the Board.[4] Claimant argued that the WCJ erred in holding (1) that Claimant waived the issue of Employer's failure to issue the Form LIBC–756 and (2) that issuing the form was not a condition precedent to Employer's offset.[5] Employer argued that the WCJ erred in interpreting *Maxim Crane* as disallowing a retrospective offset to recoup an overpayment of workers' compensation benefits.

The Board affirmed the WCJ. The Board agreed that Claimant had waived the issue of Employer's entitlement to an offset or whether Employer had to issue Claimant Form LIBC–756 before taking an offset. Nevertheless, the Board went on to hold that the Employer's tender of a Form LIBC–756 was a condition precedent to recoupment of an overpayment of benefits in every case. Because Employer did not satisfy that condition, the Board held "that the appropriate course of action in this case is to allow [Employer] an ongoing offset based on Claimant's receipt of pension benefits after the issuance of the [Form LIBC–761] Offset Notice while disallowing any retrospective credit." Board Adjudication at 8. Employer then petitioned for this Court's review.[6]

firmed the prior decision and order in all other material respects. In this case, the WCJ did not order Employer to pay interest on the recoupment amount returned to Claimant.

4. Claimant did not appeal the issue of Employer's calculation of the offset amount. Employer did not appeal the issue of whether Claimant's review petition was barred by the doctrine of laches.

5. Claimant also argued that the WCJ erred in concluding that Employer was not collaterally estopped from taking any offset. The Board rejected Claimant's argument and Claimant did not appeal; therefore, this issue is not before us.

## Issues on Appeal

On appeal, Employer argues that the Board and the WCJ erred in concluding that Employer was not entitled to recoup the overpayment of benefits to Claimant. First, Employer argues that it was not required to issue Claimant a Form LIBC–756 in order to implement a retrospective credit to recover overpaid disability benefits and that, in any case, Claimant waived that issue. Second, Employer asserts that the WCJ erred in holding that Employer's recoupment was presumed to be prejudicial and, thus, not allowed.

## Notice of Offset

We begin with a review of an employer's offset for workers' compensation disability. A claimant is permitted to receive a pension and workers' compensation wage loss benefits simultaneously. However, the claimant's workers' compensation benefits must be reduced by his pension, to the extent the pension has been funded by the employer. The same is true not only for pension benefits, but also for unemployment compensation, old age Social Security benefits and severance benefits received by a claimant receiving workers' compensation disability. These principles are set forth in Section 204(a) of the Workers' Compensation Act[7] (Act), which states, in

6. This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n. 6 (Pa.Cmwlth.2012). When reviewing questions of law, our review is plenary. *Land O'Lakes, Inc. v. Workers' Compensation Appeal Board (Todd)*, 942 A.2d 933, 936 n. 3 (Pa.Cmwlth.2008).

7. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71(a). The portion of Section 204(a) providing for an offset for pension, severance and Social Security payments was

relevant part, as follows:

> [T]he benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award [of workers' compensation benefits] made under sections 108 and 306, except for benefits payable under section 306(c).

77 P.S. § 71(a).[8]

Our Supreme Court has explained that "the purpose of the Section 204(a) offset is to foster cost containment in the workers' compensation insurance arena." *Department of Public Welfare v. Workers' Compensation Appeal Board (Harvey)*, 605 Pa. 636, 653, 993 A.2d 270, 281 (2010). "[T]he Legislature's clear intention [in providing an offset] was to afford effective redress" to the employer paying both employer-funded pension benefits and employer-funded workers' compensation benefits. *Id.* "The 1996 amendment to Section 204(a) of the Act [providing a pension offset] was aimed at preventing ... double recovery" by a claimant receiving both a pension and workers' compensation benefits. *Ferrero*

---

added by the Act of June 24, 1996, P.L. 350, No. 57 (Act 57). The portion of Section 204(a) providing an offset for unemployment compensation benefits was added by the Act of July 2, 1993, P.L. 190, No. 44 (Act 44).

8. Section 204 states, in its entirety, as follows:

(a) No agreement, composition, or release of damages made before the date of any injury shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void: Provided, however, That if the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307. Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 *et seq.*) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. The severance benefits paid by the employer directly liable for the payment of compensation and *the bene-*

*fits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).* The employe shall provide the insurer with proper authorization to secure the amount which the employe is receiving under the Social Security Act.

(b) For the exclusive purpose of determining eligibility for compensation under the act of December 5, 1936 (2nd Sp. Sess., 1937 P.L. 2897, No. 1), known as the "Unemployment Compensation Law," any employe who does not meet the monetary and credit week requirements under section 401(a) of that act due to a work-related injury compensable under this act may elect to have his base year consist of the four complete calendar quarters immediately preceding the date of the work-related injury.

(c) The employe is required to report regularly to the insurer the receipt of unemployment compensation benefits, wages received in employment or self-employment, benefits commonly characterized as "old age" benefits under the Social Security Act, severance benefits and pension benefits, which post-date the compensable injury under this act, subject to the fraud provisions of Article XI.

(d) *The department shall prepare the forms necessary for the enforcement of this section and issue rules and regulations as appropriate.*

77 P.S. § 71 (emphasis added).

*v. Workers' Compensation Appeal Board (CH & D Enterprises)*, 706 A.2d 1278, 1279 (Pa.Cmwlth.1998), *overruled on other grounds by Philadelphia Gas Works v. Workers' Compensation Appeal Board (Amodei)*, 964 A.2d 963 (Pa.Cmwlth.2009) (en banc). *See also* 7 DAVID B. TORREY & ANDREW E. GREENBERG, WORKERS' COMPENSATION LAW AND PRACTICE § 12:83 (3d ed. 2008) ("The provision for a set-off grew out of employer concerns over the ability of employees to double-recover for wage losses during periods of disability.").

Section 204(a) of the Act authorizes an offset but is silent on how the offset is to be effected. However, Section 204(d) instructs the Department of Labor and Industry to

> prepare the forms necessary for the enforcement of this section and issue rules and regulations as appropriate.

77 P.S. § 71(d). In accordance with the mandate in Section 204(d), the Department has promulgated forms and regulations to implement the employer's offset right established in Section 204(a).

The regulation requires the claimant to report to the employer any amounts received in unemployment compensation, old age Social Security, severance and pension benefits on a Form LIBC–756, "Employee's Report of Benefits." 34 Pa.Code § 123.3.[9] This form must be issued by the employer to the claimant every six months. *Muir v. Workers' Compensation Appeal Board (Visteon Systems LLC)*, 5 A.3d 847, 853 (Pa.Cmwlth.2010). The claimant must

complete Form LIBC–756 and forward it to the employer within 30 days of receiving the offsetable benefit. 34 Pa.Code § 123.3(b).

Section 123.4, entitled "Application of the offset generally," provides the method for taking the offset. It states, in relevant part, as follows:

> (a) *After receipt of Form LIBC–756*, the insurer may offset workers' compensation benefits by amounts received by the employee from any of the sources in § 123.3 (relating to employee report of benefits subject to offset). The offset of workers' compensation benefits only applies with respect to amounts of unemployment compensation, Social Security (old age), severance and pension benefits received subsequent to the work-related injury.
>
> > (1) The offset applies only to wage-loss benefits (as opposed to medical benefits, specific loss or survivor benefits).
> >
> > (2) The offset for amounts received in Social Security (old age), severance and pension benefits only applies to individuals with claims for injuries suffered on or after June 24, 1996.
>
> *   *   *
>
> (b) At least 20 days prior to taking the offset, *the insurer shall notify the employee, on Form LIBC–761, "Notice of Workers' Compensation Benefit Offset," that the workers' compensation benefits will be offset. The notice shall indicate:*

---

9. Regulation 123.3 states:

> (a) Employees shall report to the insurer amounts received in unemployment compensation, Social Security (old age), severance and pension benefits on form LIBC–756, "Employee's Report of Benefits." This includes amounts withdrawn or otherwise utilized from pension benefits which are rolled over into an IRA or other similarly restricted account while at the same time

the employee is receiving workers' compensation benefits.

> (b) Form LIBC–756 shall be completed and forwarded to the insurer within 30 days of the employee's receipt of any of the benefits specified in subsection (a) or within 30 days of any change in the receipt of the benefits specified in subsection (a), but at least every 6 months.

34 Pa.Code § 123.3.

(1) The amount of the offset.

(2) The type of offset (that is—unemployment compensation, Social Security (old age), severance or pension).

(3) How the offset was calculated, with supporting documentation, which may include information provided by the employee.

(4) When the offset commences.

(5) *The amount of any recoupment, if applicable.*

(c) Whenever the insurer's entitlement to the offset changes, the insurer shall notify the employee of the change at least 20 days prior to the adjustment on Form LIBC–761.

(d) The insurer shall provide a copy of Form LIBC–761, to the employee, the employee's counsel, if known, and the Department. The form shall be provided to the employee consistent with section 406 of the act (77 P.S. § 717).

(e) *The employee may challenge the offset by filing a petition to review offset with the Department.*

34 Pa.Code § 123.4 (emphasis added).

The regulation specifically authorizes a retrospective offset or recoupment. Section 123.5, entitled "Offset for benefits already received," states as follows:

(a) *If the insurer receives information that the employee has received benefits from one or more of the sources in* § 123.3 (relating to employee report of benefits subject to offset) subsequent to the date of injury, the insurer may be entitled to an offset to the workers' compensation benefit.

(b) The net amount received by the employee shall be calculated consistent with §§ 123.6–123.11. The amount received by the employee shall be divided by the weekly workers' compensation rate. The result shall be the number of weeks, and fraction thereof, the insurer is entitled to offset against future payments of workers' compensation benefits.

(c) The insurer shall notify the employee, the employee's counsel, if known, and the Department of the offset as specified in § 123.4(b) (relating to application of the offset generally).

(d) The employee may challenge the offset by filing a petition to review offset with the Department.

34 Pa.Code § 123.5 (emphasis added).[10]

To summarize, Section 204(a) of the Act provides that pension benefits funded by the employer "*shall* also be credited against the amount of the [workers' compensation] award" owed by that employer. 77 P.S. § 71(a) (emphasis added). Consistent with the directive in Section 204(d), the Department has developed "forms," "rules and regulations" as appropriate and necessary "for the enforcement of" Section 204 of the Act. 77 P.S. § 71(d). Those

**10.** Section 123.8, entitled "Offset for pension benefits generally," provides in relevant part that:

(a) Workers' compensation benefits otherwise payable shall be offset by the net amount an employe receives in pension benefits to the extent funded by the employer directly liable for the payment of workers' compensation.

34 Pa.Code § 123.8(a). Finally, Section 123.9, entitled "Application of offset for pension benefits," states in relevant part that:

(a) Offsets of amounts received from pension benefits shall be achieved on a weekly basis. If the employe receives the pension benefit on a monthly basis, the net amount contributed by the employer and received by the employe shall be divided by 4.34. The result is the amount of the weekly offset to the workers' compensation benefit.

34 Pa.Code § 123.9(a).

regulations specifically authorize "recoupment" of benefits overpaid, 34 Pa.Code § 123.4(b)(5), and an "offset for benefits already received," 34 Pa.Code § 123.5. The Department's Form LIBC–761 contains a specific section dealing with recoupment, which states as follows:

An ending date of _____ has been established for this offset or a portion of it *to recoup prior offsetable benefits you received.* After that date you will continue to receive reduced workers' compensation benefits in the amount of $_____ per payment based on your continuing receipt of [offsetable] benefits.

R.R. 225a (emphasis added). However, this does not end our inquiry, because the WCJ and the Board denied recoupment based on case law precedent, to which we next turn.

### Case Law Precedent

In *Maxim Crane Works v. Workers' Compensation Appeal Board (Solano)*, 931 A.2d 816 (Pa.Cmwlth.2007), the claimant, injured in October 2000, applied for old age Social Security benefits in January 2003. In April 2003, the claimant and employer entered into an agreement for workers' compensation as of October 2000. On June 6, 2005, the employer sent the claimant a Form LIBC–756, which the claimant completed and returned, informing the employer that he was receiving old age Social Security benefits. On August 3, 2005, the employer issued Form LIBC–761, informing the claimant that the employer would begin offsetting his weekly workers' compensation benefits for his Social Security retirement benefit. The employer's Form LIBC–761 further advised the claimant that it intended to recoup its overpayment of compensation for the period of time he was collecting Social Security without the employer's knowledge. The recoupment would have reduced the claim-

ant's workers' compensation disability payment to zero for a period of 25.75 weeks, *i.e.,* six months. On August 16, 2005, two weeks after being informed of the employer's intentions, the claimant filed a petition to review benefit offset.

The WCJ held that the employer was entitled to an offset as of June 6, 2005, the day it gave the claimant the Form LIBC–756, but it could not recoup benefits paid without offset prior to that date. The Board affirmed, as did this Court. In doing so, this Court rejected the employer's argument that it had an absolute right to an offset for benefits regardless of whether the claimant knew he had to report his Social Security benefits to the employer.

In rejecting the employer's argument that the claimant's knowledge of his duty was irrelevant, we relied upon a Department regulation, which states:

*An insurer shall notify the employe of the employe's reporting requirements* under sections 204 and 311.1(a) and (d) of the act (77 P.S. §§ 71 and 631.1(a) and (d)). In addition, the insurer shall provide the employe with the forms required to fulfill the employe's reporting and verification requirements under section 311.1(d) of the act.

34 Pa.Code § 123.501 (emphasis added). The employer never notified the claimant of his duty to report his Social Security until it issued him the Form LIBC–756 on June 6, 2005. Accordingly the employer's recoupment for overpayments made prior to June 6, 2005, violated 34 Pa.Code § 123.501 and, thus, was disallowed.

Notably, this Court found another reason to deny recoupment in the particular circumstance presented in *Maxim Crane.* The employer waited for two years after the claimant began receiving workers' compensation benefits to inform him of his

responsibility to report offsetable benefits. We opined that the employer's delay rendered its recoupment barred by the doctrine of laches. In such circumstances "hardship and *prejudice to Claimant can be presumed* as Claimant's weekly workers' compensation benefits would be reduced to zero for a period of 25.75 weeks." *Maxim Crane*, 931 A.2d at 820 (emphasis added).

More recently, in *Muir v. Workers' Compensation Appeal Board (Visteon Systems LLC)*, 5 A.3d 847 (Pa.Cmwlth.2010), we again considered the scope and meaning of the Bureau's offset regulations. In *Muir*, the claimant began receiving workers' compensation wage loss benefits for her October 2000 injury. On August 8, 2005, the claimant completed and returned a Form LIBC–756, which stated that she was not receiving offsetable benefits. Two years later, on June 26, 2007, after receiving another Form LIBC–756 from the employer, the claimant returned it with the information that she began to receive old age Social Security benefits on October 28, 2006. On July 31, 2007, the employer issued a Form LIBC–761 to the claimant, advising her of its plan to recoup the $6,884.50 in overpaid compensation by paying her $0 in workers' compensation benefits from August 28, 2007, until November 14, 2007, at which point the employer would resume paying workers' compensation disability benefits, offset by her ongoing Social Security benefits.

The claimant filed a penalty petition, asserting that the employer's illegal and retroactive suspension of her workers' compensation benefits caused a severe financial hardship. The WCJ denied the penalty petition because the claimant knew, by reason of the employer's 2005 issuance of an LIBC–756, that she had to inform her employer of the Social Security benefits she began to collect in October

2006. The Board reversed and disallowed employer's recoupment. This Court affirmed the Board.

In affirming the Board, we cited *Maxim Crane's* conclusion that an employer does not have an "absolute right to a retrospective credit" but, rather, the employer must implement that recoupment in accordance with the procedures in the regulation. *Muir*, 5 A.3d at 852. One procedure was established at Section 123.3(b) which states as follows:

> (b) Form LIBC–756 shall be completed and forwarded to the insurer within 30 days of the employee's receipt of any of the benefits specified in subsection (a) or within thirty days of any change in the receipt of the benefits specified in subsection (a), but at least every 6 months.

34 Pa.Code § 123.3(b). Stated otherwise, every claimant must complete the Form LIBC–756 at least every six months. Claimants who begin receiving offsetable benefits or who experience a change in their offsetable benefits must submit the form within 30 days of that event. The Board reasoned that since the claimant must return a completed form to employer every six months, it is only logical that the employer must issue a Form LIBC–756 every six months.

We found the Board's construction of its regulation consistent with the requirement that the employer must "notify the employe of the employe's reporting requirements under Section 204" of the Act. 34 Pa.Code § 123.501. It is not reasonable to expect a claimant to keep a stack of Form LIBC–756's on hand for reporting offsetable benefits or to expect a claimant to remember this reporting requirement after a single notification by the employer. The Board's construction of Section 123.3(b) as requiring the employer to issue a Form LIBC–756 every six months had another salutary effect:

The Board ... reasoned that it would prevent a claimant from being subjected to large retrospective offsets if several years passed since he last received a form from an employer and it would be unrealistic to expect unsophisticated claimants to file a new LIBC–756 on their own every six months. This Court finds no error of law in the Board's interpretation.

*Muir*, 5 A.3d at 853.

*Muir* was decided on the basis of the regulations and not on the additional equitable considerations raised in *Maxim Crane.*

## Analysis

Employer's first issue concerns the Form LIBC–756. Employer argues that the Board erred in disallowing recoupment for the stated reason that Employer had not issued Claimant a Form LIBC–756 when the Board itself found that Claimant had waived this issue. As Employer points out, had Claimant properly raised the issue, Employer would have had the opportunity to prove that it did supply the form. Because Claimant did not raise the issue until after the record was closed, Employer did not have that chance. In any case, the Board erred in holding that a Form LIBC–756 is an absolute condition precedent to a retrospective offset. Claimant responds that *Maxim Crane* and *Muir* preclude recoupment prior to the issuance of a Form LIBC–756.

The Board agreed that Claimant had waived the issue of the Form LIBC–756. However, the Board went on to hold that Employer's failure to provide Claimant with a Form LIBC–756 barred its recoupment of the overpayment. This was error. If an issue is waived, it is waived for all purposes. *See* PA. R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first

time on appeal."). Because we find the issue waived, we need not address the WCJ's holding that Employer did not have to issue Claimant a Form LIBC–756 before it did its offset because Employer did not need Claimant to report a fact that Employer already knew, *i.e.,* the amount of Claimant's disability pension.

The question then is whether Employer's recoupment of the $1,783.48 it overpaid to Claimant was barred by the application of the equitable principles announced in *Maxim Crane.* The WCJ applied these principles in ordering Employer to return $1,783.48 to Claimant. The WCJ construed *Maxim Crane* to mean there is a "presumption of prejudice" whenever an employer seeks to recoup an overpayment of offsetable benefits, no matter how implemented. Employer disagrees with this construction of *Maxim Crane* but rejoins that it successfully rebutted any presumption of prejudice.

Section 204(a) of the Act authorizes an offset to disability compensation for pension benefits paid by the employer, and this offset serves an important policy objective. It reduces the cost of the workers' compensation system by eliminating double payment for the same loss of wages. To that end, Section 204(a) and the regulations expressly authorize an employer to do a retrospective offset as needed to recover overpaid workers' compensation benefits. Indeed, this Court has allowed an employer to recoup overpaid benefits to prevent the claimant's unjust enrichment even in situations where recoupment is not expressly authorized in the Act or regulations. *See Mino v. Workers' Compensation Appeal Board (Crime Prevention Association)*, 990 A.2d 832 (Pa.Cmwlth.2010) (employer permitted to recoup workers' compensation disability benefits erroneously paid); *Department of*

*Transportation v. Workers' Compensation Appeal Board (Noll)*, 80 A.3d 525 (Pa. Cmwlth.2013) (employer permitted to recoup workers' compensation disability benefits erroneously paid to the claimant instead of deducted and sent to the claimant's counsel for his fee).

■ Claimant received benefits to which he was not entitled and thereby reaped a double recovery, which is precisely what Section 204(a) was intended to prevent. It is true that the terms of a proposed recoupment may be modified where it would cause a financial hardship. *See, e.g., id.* at 532 and *Fahringer, McCarty & Grey, Inc. v. Workmen's Compensation Appeal Board (Green)*, 107 Pa.Cmwlth. 597, 529 A.2d 56, 59 (1987) (remanding for determination of amount of weekly deduction claimant could afford). However, this does not mean that there is a presumption of prejudice in every case where an employer undertakes a recoupment.

*Maxim Crane* was decided on legal grounds, *i.e.*, that the employer had failed to notify the claimant of his duty to report offsetable benefits to the employer. The employer did not issue him a Form LIBC–756, and it did not call or e-mail the claimant to inform him of this duty. The regulation at 34 Pa.Code § 123.501 squarely places the burden on the employer to "notify the employe of the employe's reporting requirements under Section 204" of the Act and to do so by using the prescribed forms. *Maxim Crane* went on to explain that where an employer waits two years to satisfy this notice obligation, there will be a presumption that recoupment will cause a hardship. This was *obiter dicta* because the case was decided on the employer's

failure to inform the claimant of his duty to report offsetable benefits.

In this appeal, the WCJ, who did not have the benefit of our holding in *Muir*, construed *Maxim Crane* to mean that there is always a presumed hardship when an employer undertakes a recoupment. First, *Maxim Crane*'s conclusion of hardship was based on its particular facts, *i.e.*, where the recoupment covered a two-year overpayment of disability compensation and reduced the weekly compensation to $0 for six months. In any case, that conclusion in *Maxim Crane* was *obiter dicta.* Second, *Muir*, advisedly, did not address the equities of recoupment but, rather, established that the employer must notify the claimant of his reporting requirement by sending him a Form LIBC–756 every six months. By doing so, *Muir* ensured that it will be a rare case where an employer will need to recoup an overpayment longer in duration than six months. Implicitly, *Muir* established that a recoupment of an overpayment that occurred over six months or less eliminates the need of the WCJ to inquire into hardship.[11] This is not to say that a WCJ cannot structure a recoupment in a way that minimizes its impact on the claimant. *See, e.g., Noll*, 80 A.3d at 532. Such a structuring is consistent with the humanitarian purpose of the Act.

■ Here, the overpayment covered a period of weeks, not a period in excess of six months. Employer then recouped the overpayment in $100 weekly increments, leaving Claimant with $455.76 in workers' compensation each week in addition to $3,568 in monthly pension benefits. Employer points out that a recoupment done

---

11. Hardship is a difficult inquiry because the circumstances of each claimant will be different. Further, it is difficult to square the notion of "hardship" to the situation where a person is required to return monies to which he is not entitled. The manner of repayment may create a hardship, and a WCJ has discretion to fashion an appropriate repayment schedule.

in increments creates a risk that the employer will never recoup the entire overpayment, because the claimant may stop receiving workers' compensation benefits in the meantime. Notably, Claimant waited three years, long after the entire $1,783.48 overpayment had already been recouped, to file his petition to review offset.

### Conclusion

In summary, the Board erred in basing its decision on Employer's failure to send Claimant a Form LIBC–756. That issue was waived. The WCJ erred in concluding that an employer must overcome a presumption of prejudice whenever it wishes to recoup an overpayment of offsetable benefits, even one less than six months. Employer's recoupment of $100 per week from Claimant was permissible and, to the extent that payment schedule caused a financial hardship in 2005, the issue is moot.

For these reasons, we reverse the Board's adjudication to the extent it disallowed recoupment of the $1,783.48 overpayment and we affirm it in all other respects.

### ORDER

AND NOW, this 1st day of May, 2014, the order of the Workers' Compensation Appeal Board dated February 8, 2013, in the above captioned matter is hereby REVERSED inasmuch as it disallowed recoupment of overpaid benefits and AFFIRMED in all other respects.