IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, and UPMC              :
Benefit Management Services, Inc.,        :
                  Petitioners             :
                                          :
            v.                            :    No. 362 C.D. 2013
                                          :    Submitted: January 31, 2014
Workers' Compensation Appeal              :
Board (Burke),                            :
                  Respondent              :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: July 23, 2014

           The City of Pittsburgh (Employer) and UPMC Benefit Management
Services, Inc. petition for review of an adjudication of the Workers' Compensation
Appeal Board (Board) setting aside Employer's recoupment of an overpayment of
workers' compensation benefits.  For a period of approximately six and a half
months, Employer paid Michael Burke (Claimant) total disability workers'
compensation without an offset for the disability pension Employer also paid
Claimant.  Employer recouped the overpayment of workers' compensation by
reducing Claimant's weekly disability payment first by $75 weekly and then by
$25 weekly until it was repaid.  The Board set aside the recoupment because
Employer did not give Claimant the official form for reporting his pension income
*i.e.*, a Form LIBC-756, before effecting the recoupment.  The Workers'

Compensation Judge (WCJ) held that Claimant waived the issue of the reporting form and that, in any case, Employer did not need to have Claimant report his pension because Employer had full knowledge of the pension that it was paying Claimant. However, the WCJ set aside the recoupment for a different reason, namely, that Employer failed to prove that the recoupment did not prejudice Claimant. Concluding that both the Board and the WCJ erred, we reverse.

Claimant worked for the City of Pittsburgh as a fire captain. On March 13, 2004, he sustained injuries to his left knee, right elbow and right shoulder while fighting a fire. At the time of the injury, Claimant earned approximately $78,000 annually. Employer, which is self-insured for workers' compensation, accepted liability for the injury and paid Claimant Heart and Lung benefits equal to his full salary after the injury.[1]

On January 10, 2005, Claimant elected to take a disability pension. This ended his Heart and Lung benefits and replaced them with workers' compensation benefits because his disability was of an indefinite duration. Claimant and Employer executed an Agreement for Compensation providing for the payment of workers' compensation wage loss benefits in the amount of $690 per week, the maximum rate for any claimant injured in 2004. As of January 10, 2005, Claimant began receiving approximately $3,100 per month in pension benefits and $690 per week in workers' compensation benefits.

On June 24, 2005, Employer issued a Form LIBC-761, "Notice of Workers' Compensation Benefit Offset," to Claimant, stating that as of July 25,

---

[1] Under what is commonly referred to as the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638, firemen who are temporarily unable to perform their duties because of a work injury are entitled to receive their full salary.

2005, his compensation would be reduced to $332.57 weekly because Employer was taking an offset of $357.43.[2] This offset represented the portion of Claimant's disability pension that was funded by Employer. Employer also informed Claimant that Employer had overpaid Claimant disability compensation for the period from January 10, 2005, to July 25, 2005, because the payments for those weeks did not include the offset. The overpayment totaled $10,059.11. Employer advised Claimant that $100 would be deducted from Claimant's weekly disability payment until the overpayment of $10,059.11 was paid back to Employer.

The offset and $100 deduction should have reduced Claimant's weekly disability payment to $232.57 from July 25, 2005, to June 25, 2007. However, Employer erroneously deducted only $75 per week, paying Claimant $257.43 per week in workers' compensation during that time. As a result, the overpayment had not been recouped by June 25, 2007, as had been Employer's stated intention. Upon discovering this error, Employer issued a second Form LIBC-761 advising Claimant that Employer would deduct $25 from Claimant's weekly disability payment from June 25, 2007, through January 20, 2010, in order to complete the recoupment of the overpayment. Therefore, from June 25, 2007, through January 20, 2010, Claimant received workers' compensation payments of $307.57 per week. Employer informed Claimant that it would begin paying $332.57 per week in workers' compensation to Claimant as of January 21, 2010.

On December 29, 2008, Claimant filed a petition to review compensation benefit offset, alleging that Employer's offset calculation was

---

[2] The regulations require an employer to provide the Form LIBC-761 to the claimant "[a]t least 20 days prior to taking the offset." 34 Pa. Code §123.4(b). Thus, the offset could not begin until July.

3

wrong. The petition also challenged Employer's entitlement to any recoupment, asserting that the weekly deduction caused a financial hardship. Employer filed an answer denying Claimant's allegations.

The matter was assigned to a WCJ.[3] Employer's evidence consisted of expert testimony establishing the amount of Claimant's pension contributed by Employer. In response, Claimant presented his own expert evidence in an effort to establish a lower offset amount.

Claimant also testified about his personal finances and how they were affected by the offset. The record established that Claimant's disability pension totals $3,100 each month, or $37,200 per year. After Employer's offset and recoupment, Claimant's weekly compensation of $332.57 totals $17,293.64 per year. Claimant's yearly income from his disability pension and workers' compensation is $54,493.64.

Claimant testified that his household consists of himself and his wife. Claimant's household expenses include, *inter alia*, a mortgage, a car payment and utility bills. Claimant testified that he and his wife set their household budget based on his pre-injury firefighter earnings. They had to "budget differently" when Claimant's benefits were changed to the pension plus workers' compensation. Reproduced Record at 471a (R.R. ___). Claimant testified that when Employer took the offset and began recouping $75 per week, he had to rework the entire household budget. Claimant sold his car and bought an older car to reduce the car payment. Claimant and his wife also refinanced the mortgage twice and cut back

---

[3] Numerous other Pittsburgh firefighters filed petitions to review compensation benefit offset, which were assigned to two different WCJs who conducted joint hearings because the issues were similar. The WCJs then issued individual decisions for each firefighter.

4

on their vacations. Claimant's wife got a higher paying job and worked overtime to help pay the bills. Claimant stated that the offset plus $75 weekly recoupment "changed our lifestyle, to this day, dramatically." R.R. 474a. However, Claimant acknowledged that he still would have had to rebudget when the offset began, even if Employer did not recoup any overpayment. R.R. 479a. As of June 2007, Employer recouped $25 per week instead of $75; this recoupment was set to end two months after Claimant testified.

The WCJ credited Employer's actuarial evidence on its contribution to Claimant's pension. Accordingly, he upheld the amount of Employer's offset. The WCJ then addressed the other issues raised by Claimant.

Claimant argued that Employer was not entitled to any offset because it did not provide him with a Form LIBC-756, entitled "Employee's Report of Benefits for Offsets," before notifying him of its intention to take an offset. The WCJ found that by not raising that issue while the record was open, Claimant waived this argument. In any case, the WCJ determined that Employer was not required to issue a Form LIBC-756 to Claimant before taking an offset for Claimant's pension because Employer knew about the pension and, thus, did not need Claimant's report. The WCJ reasoned:

> Even if the issue had not been waived, the undersigned cannot perceive that the employer's tender of a Form 756 to a worker is a condition precedent to its later assertion of a credit. The right to a set-off is established by statute (via an Act 57 of 1996 amendment), and no condition upon taking the credit is established via that amendment. Nor do the Act 57 regulations state that tender of the form is a condition precedent.

WCJ Decision, July 30, 2010, at 12; Conclusion of Law No. 5.

5

Claimant also argued that Employer's recoupment was invalid because it imposed a financial hardship on him. The WCJ agreed. Citing *Maxim Crane Works v. Workers' Compensation Appeal Board (Solano)*, 931 A.2d 816 (Pa. Cmwlth. 2007), the WCJ concluded that a recoupment raises a "presumption of prejudice" to the claimant that the employer must rebut before it can recover its overpayment of workers' compensation. WCJ Decision, July 30, 2010, at 12; Conclusion of Law No. 4. The WCJ found that Claimant was prejudiced by Employer's recoupment.[4]

The WCJ granted, in part, Claimant's petition to review compensation benefit offset. The WCJ allowed Employer the ongoing pension offset but disallowed Employer's recoupment of its overpayment. Accordingly, he ordered Employer to reimburse Claimant the full amount of the recoupment.[5]

Claimant and Employer appealed to the Board.[6] Claimant argued that the WCJ erred in holding (1) that Claimant waived the issue of Employer's failure to issue a Form LIBC-756 and (2) that Employer did not have to issue this

---

[4] Claimant also argued that Employer was collaterally estopped from presenting evidence on whether it had correctly calculated Claimant's offset for his disability. The WCJ held that Employer was not collaterally estopped because the prior litigation cited by Claimant had involved different firefighters and, therefore, different factual issues. The Board, likewise, rejected Claimant's collateral estoppel argument and Claimant did not appeal; therefore, this issue is not before us.

[5] Thereafter the WCJ issued an amended order for all firefighter cases he had been assigned, including the instant one, clarifying that Employer was to apply the updated pension offset calculations it had submitted into evidence, which in some cases was different than the offset amounts found in the Form LIBC-761 Notice of Offset. For any case where the updated calculations decreased the offset amount, the WCJ ordered Employer to reimburse the claimants the amount they had been underpaid, with interest. The WCJ reaffirmed the prior decision and order in all other material respects. In this case, the WCJ did not order Employer to pay interest on the recoupment amount returned to Claimant.

[6] Claimant did not appeal the issue of Employer's calculation of the offset amount.

reporting form before taking an offset. Employer argued that the WCJ erred in interpreting *Maxim Crane* as disallowing a retrospective offset to recoup an overpayment of workers' compensation benefits.

The Board affirmed the WCJ. The Board agreed that Claimant had waived the issue of whether Employer had to issue Claimant a Form LIBC-756 before taking an offset. Nevertheless, the Board went on to hold that Employer's tender of a Form LIBC-756 was a condition precedent to recoupment of an overpayment of benefits in every case. Because Employer did not satisfy that condition, the Board held that the "appropriate course of action in this case is to allow [Employer] an ongoing offset based on Claimant's receipt of pension benefits after the issuance of the [Form LIBC-761] Offset Notice while disallowing any retrospective credit." Board Adjudication at 9. Employer then petitioned for this Court's review.[7]

On appeal, Employer argues that the Board and the WCJ erred in concluding that Employer was not entitled to recoup the overpayment of benefits to Claimant. First, Employer argues that it was not required to issue Claimant a Form LIBC-756 in order to implement a retrospective credit to recover overpaid disability benefits and that, in any case, Claimant waived that issue. Second, Employer asserts that the WCJ erred in holding that Employer's recoupment was presumed to be prejudicial and, thus, not allowed.

---

[7] This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012). When reviewing questions of law, our review is plenary. *Land O' Lakes, Inc. v. Workers' Compensation Appeal Board (Todd)*, 942 A.2d 933, 936 n.3 (Pa. Cmwlth. 2008).

7

This Court addressed these very issues in the related case of *City of Pittsburgh and UPMC Benefit Management Services, Inc. v. Workers' Compensation Appeal Board (Wright)*, 90 A.3d 801 (Pa. Cmwlth. 2014) (*City of Pittsburgh I*), which involved the same employer and similar facts. There, we held that the Board erred in holding that Employer's failure to provide the claimant with a Form LIBC-756 barred its recoupment of the overpayment when the Board itself found that the claimant had waived the issue of the Form LIBC-756.[8]

We also held that the WCJ erred in construing *Maxim Crane* to mean there is always a "presumption of prejudice" that an employer must overcome in order to recoup an overpayment of compensation, no matter how implemented. Section 204 of the Workers' Compensation Act (Act)[9] and regulations promulgated thereunder expressly authorize recoupment of compensation that was overpaid because it did not include an offset. Because the employer in *Maxim Crane* failed to follow those regulations, the recoupment was set aside. In *obiter dicta*, *Maxim Crane* also found that the recoupment was unacceptable because the employer

---

[8] Because we find the issue waived, we need not address the WCJ's holding that Employer did not have to issue Claimant a Form LIBC-756 before it did its offset because Employer did not need Claimant to report an event of which Employer had full knowledge, *i.e.*, the amount of Claimant's disability pension.

[9] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §71. The portion of Section 204(a) providing for an offset for pension payments was added by the Act of June 24, 1996, P.L. 350, No. 57. Section 204(a) states, in relevant part, as follows:

> [T]he benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award [of workers' compensation benefits] made under sections 108 and 306, except for benefits payable under section 306(c).

77 P.S. §71(a).

sought to recover two years of overpayments by reducing the claimant's weekly compensation to $0 for six months.[10]

Finally, in *City of Pittsburgh I,* we addressed *Muir v. Workers' Compensation Appeal Board (Visteon Systems LLC)*, 5 A.3d 847 (Pa. Cmwlth. 2010). *Muir* established that the regulations require the employer to give a claimant notice at least once every six months of his duty to report offsetable benefits to the employer. The employer does this by issuing the claimant a Form LIBC-756. In this way, a recoupment should not need to cover an overpayment made over a period of time longer than six months. *City of Pittsburgh I* also confirmed that in keeping with the Act's humanitarian purposes, a WCJ may structure a recoupment in a way that minimizes its impact on the claimant.

Here, Claimant was overpaid for approximately six and a half months. However, Claimant did not identify any hardship specifically attributable to the recoupment or its structure.[11] He stated only that the offset coupled with the recoupment caused him to rework the household budget. Notably, he acknowledged that the offset alone would have caused the need to rebudget. From July 2005 to June 2007, Employer recouped $75 a week from Claimant when it intended to recoup $100 a week. Accordingly, Employer did not complete the

---

[10] *Maxim Crane* was decided on legal grounds, *i.e.,* that the employer had failed to comply with the regulation at 34 Pa. Code §123.501 which squarely places the burden on the employer to notify the claimant of his duty to report offsetable benefits to the employer. *Maxim Crane* went on to explain that where an employer waits two years to satisfy this notice obligation, there will be a presumption that recoupment will cause a hardship. This was *obiter dicta* because the case was decided on the employer's failure to follow 34 Pa. Code §123.501.

[11] Even so, this case is nothing like *Maxim Crane's dicta* where the claimant would have received $0 for six months. Here, Claimant received $257.43 in weekly compensation during the initial two-year period when Employer recouped $75 a week, and he received $307.57 in weekly compensation during the following two-and-a-half years when Employer recouped $25 a week.

recoupment by June 2007 as originally stated. Employer recouped the remainder of the overpayment by deducting $25 a week from Claimant's compensation checks from June 2007 to January 2010.[12] Claimant filed his review offset petition challenging the recoupment in December 2008 and testified in support of his petition in November 2009, two months before the recoupment ended. In short, by the time Claimant filed his review offset petition, Employer had nearly completed the recoupment, and by the time the WCJ issued a decision, the recoupment had been completed for over six months. Under those circumstances, the issue of whether the recoupment resulted in any financial hardship or could have been structured differently is moot.

Our holding in *City of Pittsburgh I* is dispositive. Accordingly, we reverse the Board's adjudication to the extent it disallowed recoupment of the overpayment and affirm it in all other respects.

_____
MARY HANNAH LEAVITT, Judge

---

[12] Employer voluntarily decreased the weekly recoupment amount to $25 in June 2007. As this Court noted in *City of Pittsburgh I*, Employer, by structuring the recoupment in this way, risked not recouping the entire overpayment, because Claimant could have stopped receiving workers' compensation benefits in the meantime.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, and UPMC     :
Benefit Management Services, Inc.,     :
            Petitioners     :
                                     :
            v.     :    No. 362 C.D. 2013
                                     :
Workers' Compensation Appeal     :
Board (Burke),     :
            Respondent     :

# **O R D E R**

AND NOW, this 23rd day of July, 2014, the order of the Workers' Compensation Appeal Board dated February 22, 2013, in the above captioned matter is hereby REVERSED inasmuch as it disallowed recoupment of overpaid benefits and AFFIRMED in all other respects.

                                    _____

                                    MARY HANNAH LEAVITT, Judge