IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, :
and UPMC Benefit :
Management Services, Inc., :
            Petitioners :
  :
         v. : No. 363 C.D. 2013
  : Submitted: January 31, 2014
  :
Workers' Compensation :
Appeal Board (Lacava), :
            Respondent :


BEFORE:    HONORABLE DAN PELLEGRINI, President Judge
                 HONORABLE MARY HANNAH LEAVITT, Judge
                 HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                              FILED: August 8, 2014

        The City of Pittsburgh (Employer) and UPMC Benefit Management Services, Inc. petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) setting aside Employer's recoupment of an overpayment of workers' compensation benefits. For a period of approximately one year, Employer paid Robert Lacava (Claimant) total disability workers' compensation without an offset for the disability pension Employer also paid Claimant. Employer recouped the overpayment of workers' compensation by reducing Claimant's disability payment by $50 weekly until it was repaid. The Board set aside the recoupment because Employer did not give Claimant the official form for reporting his pension income, i.e., a Form LIBC-756, before effecting the recoupment. The Workers' Compensation Judge (WCJ) held that Claimant waived

the issue of the reporting form and that, in any case, Employer did not need to have Claimant report his pension because Employer had full knowledge of the pension that it was paying Claimant. However, the WCJ set aside the recoupment for a different reason, namely, that Employer failed to prove that the recoupment did not prejudice Claimant. Concluding that both the Board and the WCJ erred, we reverse.

Claimant worked for the City of Pittsburgh as a fire captain. On June 18, 2005, he sustained a neck injury while lifting a heavy chain saw onto a fire truck. At the time of the injury, Claimant earned approximately $78,000 annually. Following litigation, Employer, which is self-insured for workers' compensation, paid Claimant Heart and Lung benefits equal to his full salary.[1]

On December 30, 2005, Claimant elected to take a disability pension. This ended his Heart and Lung benefits and replaced them with workers' compensation benefits because his disability was of an indefinite duration. Claimant and Employer executed an Agreement for Compensation providing for the payment of workers' compensation wage loss benefits in the amount of $716 per week, the maximum rate for any claimant injured in 2005. As of December 31, 2005, Claimant began receiving $3,383 per month in pension benefits and $716 per week in workers' compensation benefits.

On November 15, 2006, Employer issued a Form LIBC-761, "Notice of Workers' Compensation Benefit Offset," to Claimant, stating that as of December 25, 2006, his compensation would be reduced to $603.75 weekly

---

[1] Under what is commonly referred to as the Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*, 53 P.S. §§637-638, firemen who are temporarily unable to perform their duties because of a work injury are entitled to receive their full salary.

because Employer was taking an offset of $112.25.[2] This offset represented the portion of Claimant's disability pension that was funded by Employer. Employer also informed Claimant that Employer had overpaid Claimant disability compensation for the period from December 31, 2005, through December 24, 2006, because the payments for those weeks did not include the offset. The overpayment totaled $5,756.82. Employer advised Claimant that beginning December 25, 2006, $50 would be deducted from Claimant's weekly disability payment until the overpayment of $5,756.82 was paid back to Employer. The offset and $50 deduction reduced Claimant's weekly disability payment to $553.75 from December 25, 2006, through March 9, 2009. At that point, Employer began paying Claimant $603.75 per week in workers' compensation, and has continued to do so.

On December 29, 2008, Claimant filed a petition to review compensation benefit offset, alleging that Employer's offset calculation was wrong. The petition also challenged Employer's entitlement to any recoupment, asserting that the $50 weekly deduction caused a financial hardship. Employer filed an answer denying Claimant's allegations.

The matter was assigned to a WCJ.[3] Employer's evidence consisted of expert testimony establishing the amount of Claimant's pension contributed by

---

[2] The regulations require an employer to provide the Form LIBC-761 to the claimant "[a]t least 20 days prior to taking the offset." 34 Pa. Code §123.4(b). Thus, the offset could not begin until December.

[3] Numerous other Pittsburgh firefighters filed petitions to review compensation benefit offset, which were assigned to two different WCJs who conducted joint hearings because the issues were similar. The WCJs then issued individual decisions for each firefighter.

Employer. In response, Claimant presented his own expert evidence in an effort to establish a lower offset amount.

Claimant also testified about his personal finances and how they were affected by the offset. The record established that Claimant's disability pension totals $3,383 each month, or $40,596 per year. After Employer's offset and recoupment, Claimant's weekly compensation of $603.75 totals $31,395 per year.[4] Claimant's yearly income from his disability pension and workers' compensation is $71,991.

Claimant testified that his household consists of himself, his wife and his daughter. Claimant's household expenses include, *inter alia*, a mortgage, a car payment, utility bills and student loan payments for his daughter. Claimant testified that he and his wife had set their household budget on the basis of his pre-injury firefighter earnings and her earnings from her full-time job at a bank. Claimant testified that it was "difficult" to pay the household expenses while Employer was recouping the $50 per week, but he was nevertheless able to pay all bills. Reproduced Record at 365a, 370a (R.R. ___). In October 2007, Claimant received a lump sum payment from Employer of approximately $24,000 to compensate him for scarring to his neck following surgery. In approximately April 2008, Claimant's wife lost her job which paid $53,000 yearly. However, Claimant refused to classify the loss of his wife's salary as having a bigger impact on the household budget than Employer's recoupment of $50 per week. Claimant acknowledged that he did not contact Employer to challenge or complain about the $50 weekly recoupment after receiving Employer's notice in November 2006.

---

[4] Fifteen percent of Claimant's workers' compensation goes to his attorney to pay his fee for the prior Heart and Lung Act litigation.

The WCJ credited Employer's actuarial evidence on its contribution to Claimant's pension. Accordingly, she upheld the amount of Employer's offset. The WCJ then addressed the other issues raised by Claimant.

Claimant argued that Employer was not entitled to any offset because it did not provide him with a Form LIBC-756, entitled "Employee's Report of Benefits for Offsets," before notifying him of its intention to take an offset. The WCJ found that by not raising that issue while the record was open, Claimant waived this argument. In any case, the WCJ determined that Employer was not required to issue a Form LIBC-756 to Claimant before taking an offset for Claimant's pension because Employer knew about the pension and, thus, did not need Claimant's report. The WCJ reasoned:

> Even if the issue had not been waived, the undersigned cannot perceive that the employer's tender of a Form 756 to a worker is a condition precedent to its later assertion of a credit. The right to a set-off is established by statute (via an Act 57 of 1996 amendment), and no condition upon taking the credit is established via that amendment. Nor do the Act 57 regulations state that tender of the form is a condition precedent.

WCJ Decision, July 30, 2010, at 7; Conclusion of Law No. 4.

Claimant also argued that Employer's recoupment was invalid because it imposed a financial hardship on him. The WCJ agreed. Citing *Maxim Crane Works v. Workers' Compensation Appeal Board (Solano)*, 931 A.2d 816 (Pa. Cmwlth. 2007), the WCJ concluded that a recoupment raises a "presumption of prejudice" to the claimant that the employer must rebut before it can recover its overpayment of workers' compensation. WCJ Decision, July 30, 2010, at 6; Summary and Critical Analysis No. 1. The WCJ found that Claimant was prejudiced by Employer's recoupment because "the unexpected delay of [his]

5

increased loss of income" caused him "some degree of financial difficulty" because he is not wealthy. *Id*. at 6; Summary and Critical Analysis Nos. 2-3.[5]

The WCJ granted, in part, Claimant's petition to review compensation benefit offset. The WCJ allowed Employer the ongoing pension offset but disallowed Employer's recoupment of its overpayment. Accordingly, she ordered Employer to reimburse Claimant the full amount of the recoupment.[6]

Claimant and Employer appealed to the Board.[7] Claimant argued that the WCJ erred in holding (1) that Claimant waived the issue of Employer's failure to issue a Form LIBC-756 and (2) that Employer did not have to issue this reporting form before taking an offset. Employer argued that the WCJ erred in interpreting *Maxim Crane* as disallowing a retrospective offset to recoup an overpayment of workers' compensation benefits.

The Board affirmed the WCJ. The Board agreed that Claimant had waived the issue of whether Employer had to issue Claimant a Form LIBC-756 before taking an offset. Nevertheless, the Board went on to hold that Employer's

---

[5] Claimant also argued that Employer was collaterally estopped from presenting evidence on whether it had correctly calculated Claimant's offset for his disability. The WCJ held that Employer was not collaterally estopped because the prior litigation cited by Claimant had involved different firefighters and, therefore, different factual issues. The Board, likewise, rejected Claimant's collateral estoppel argument and Claimant did not appeal; therefore, this issue is not before us.

[6] Thereafter the WCJ issued an amended order for all firefighter cases she had been assigned, including the instant one, clarifying that Employer was to apply the updated pension offset calculations it had submitted into evidence, which in some cases was different than the offset amounts found in the Form LIBC-761 Notice of Offset. For any case where the updated calculations decreased the offset amount, the WCJ ordered Employer to reimburse the claimants the amount they had been underpaid, with interest. The WCJ reaffirmed the prior decision and order in all other material respects. In this case, the WCJ did not order Employer to pay interest on the recoupment amount returned to Claimant.

[7] Claimant did not appeal the issue of Employer's calculation of the offset amount.

6

tender of a Form LIBC-756 was a condition precedent to recoupment of an overpayment of benefits in every case. Because Employer did not satisfy that condition, the Board held that the "appropriate course of action in this case is to allow [Employer] an ongoing offset based on Claimant's receipt of pension benefits after the issuance of the [Form LIBC-761] Offset Notice while disallowing any retrospective credit." Board Adjudication at 8. Employer then petitioned for this Court's review.[8]

On appeal, Employer argues that the Board and the WCJ erred in concluding that Employer was not entitled to recoup the overpayment of benefits to Claimant. First, Employer argues that it was not required to issue Claimant a Form LIBC-756 in order to implement a retrospective credit to recover overpaid disability benefits and that, in any case, Claimant waived that issue. Second, Employer asserts that the WCJ erred in holding that Employer's recoupment was presumed to be prejudicial and, thus, not allowed.

This Court addressed these very issues in the related case of *City of Pittsburgh and UPMC Benefit Management Services, Inc. v. Workers' Compensation Appeal Board (Wright)*, 90 A.3d 801 (Pa. Cmwlth. 2014) (*City of Pittsburgh I*), which involved the same employer and similar facts. There, we held that the Board erred in holding that Employer's failure to provide the claimant with

_____

[8] This Court's review of an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth.) *petition for allowance of appeal denied*, 50 A.3d 127 (Pa. 2012). When reviewing questions of law, our review is plenary. *Land O'Lakes, Inc. v. Workers' Compensation Appeal Board (Todd)*, 942 A.2d 933, 936 n.3 (Pa. Cmwlth. 2008).

a Form LIBC-756 barred its recoupment of the overpayment when the Board itself found that the claimant had waived the issue of the Form LIBC-756.[9]

We also held that the WCJ erred in construing *Maxim Crane* to mean there is always a "presumption of prejudice" that an employer must overcome in order to recoup an overpayment of compensation, no matter how implemented. Section 204 of the Workers' Compensation Act (Act)[10] and regulations promulgated thereunder expressly authorize recoupment of compensation that was overpaid because it did not include an offset. Because the employer in *Maxim Crane* failed to follow those regulations, the recoupment was set aside. In *obiter dicta*, *Maxim Crane* also found that the recoupment was unacceptable because the employer sought to recover two years of overpayments by reducing the claimant's weekly compensation to $0 for six months.[11]

---

[9] Because we find the issue waived, we need not address the WCJ's holding that Employer did not have to issue Claimant a Form LIBC-756 before it did its offset because Employer did not need Claimant to report an event of which Employer had full knowledge, *i.e.*, the amount of Claimant's disability pension.

[10] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §71. The portion of Section 204(a) providing for an offset for pension payments was added by the Act of June 24, 1996, P.L. 350, No. 57. Section 204(a) states, in relevant part, as follows:

> [T]he benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award [of workers' compensation benefits] made under sections 108 and 306, except for benefits payable under section 306(c).

77 P.S. §71(a).

[11] *Maxim Crane* was decided on legal grounds, *i.e.,* that the employer had failed to comply with the regulation at 34 Pa. Code §123.501, which squarely places the burden on the employer to notify the claimant of his duty to report offsetable benefits to the employer. *Maxim Crane* went on to explain that where an employer waits two years to satisfy this notice obligation, there will be a presumption that recoupment will cause a hardship. This was *obiter dicta* because the case was decided on the employer's failure to follow 34 Pa. Code §123.501.

Finally, in *City of Pittsburgh I*, we addressed *Muir v. Workers' Compensation Appeal Board (Visteon Systems LLC)*, 5 A.3d 847 (Pa. Cmwlth. 2010). *Muir* established that the regulations require the employer to give a claimant notice at least once every six months of his duty to report offsetable benefits to the employer. The employer does this by issuing the claimant a Form LIBC-756. In this way, a recoupment should not need to cover an overpayment made over a period of time longer than six months. *City of Pittsburgh I* also confirmed that in keeping with the Act's humanitarian purposes, a WCJ may structure a recoupment in a way that minimizes its impact on the claimant.

Here, Claimant was overpaid for approximately one year. Employer recouped the overpayment by deducting $50 from Claimant's weekly compensation payment from December 25, 2006, through March 9, 2009.[12] However, Claimant did not identify any hardship specifically attributable to the recoupment or its structure.[13] He stated only that it was "difficult" to pay the household bills while Employer was recouping the $50 per week, but he was nevertheless able to do so. In short, by the time Claimant filed his review offset petition challenging the recoupment in December 2008, Employer had nearly completed the recoupment, and by the time the WCJ issued a decision, the recoupment had been completed for almost seventeen months. Under those

---

[12] As this Court noted in *City of Pittsburgh I*, Employer, by structuring the recoupment in this way, risked not recouping the entire overpayment, because Claimant could have stopped receiving workers' compensation benefits in the meantime.

[13] Even so, this case is nothing like *Maxim Crane's dicta* where the claimant would have received $0 for six months. Here, Claimant received $553.75 during the twenty-six-and-a-half month period from December 25, 2006, through March 9, 2009, when Employer recouped $50 a week.

9

circumstances, the issue of whether the recoupment resulted in any financial hardship or could have been structured differently is moot.

Our holding in *City of Pittsburgh I* is dispositive. Accordingly, we reverse the Board's adjudication to the extent it disallowed recoupment of the overpayment and affirm it in all other respects.

_____
MARY HANNAH LEAVITT, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Pittsburgh, and UPMC    :
Benefit Management Services, Inc.,    :
        Petitioners    :
    :
    v.    :  No. 363 C.D. 2013
    :
Workers' Compensation Appeal    :
Board (Lacava),    :
        Respondent    :

# **O R D E R**

AND NOW, this 8th day of August, 2014, the order of the Workers' Compensation Appeal Board dated February 15, 2013, in the above captioned matter is hereby REVERSED inasmuch as it disallowed recoupment of overpaid benefits and AFFIRMED in all other respects.

_____
MARY HANNAH LEAVITT, Judge