**CITY OF PHILADELPHIA, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HARVEY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 8, 2010.
Decided March 17, 2010.

Martin G. Malloy, Philadelphia, for petitioner.

W. Michael Mulvey, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge, BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

City of Philadelphia (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that granted a rehearing request filed by Robert Harvey (Claimant) and modified the decision of Workers' Compensation Judge (WCJ) Scott Olin. We affirm.

In adjudicating this appeal, this Court must consider the language set forth in both Section 204(a) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 71(a), and Section 22–401(4)(a) Philadelphia Code.

Section 204(a) of the Act states in relevant part:

> The severance benefits paid by the employer directly liable for the payment of compensation and the *benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation* which are *received* by an employe *shall also be credited against the amount* of the award made under sections 108 and 306. [1] (Emphasis added).

77 P.S. § 71(a).

In addition, Philadelphia Code § 22–401(4)(a) (relating to disability pension benefit offsets) provides:

> (a) If the member *receives or is entitled to receive*, for and during a period of disability, compensation from the City Treasury of the City, *workers' compensation benefits* or payments in the nature of workers' compensation benefits from any source, *such disability retirement benefits shall be reduced by the amount of such compensation*, benefits or payments for the period such com-

---

1. Section 204(a) was amended to reflect that an employer is entitled to offset a claimant's workers' compensation benefits based on its contributions to the claimant's pension by the Act of June 24, 1996, P.L. 350 (Act 57). *City of Philadelphia v. Workers' Compensation Appeal Board (Grevy)*, 968 A.2d 830 (Pa.Cmwlth. 2009). This amendment became effective prior to Claimant's date of injury and thus is applicable to the instant matter. *City of Philadelphia v. Workers' Compensation Appeal Board (Andrews)*, 948 A.2d 221 (Pa.Cmwlth. 2008).

pensation, benefits or payments are paid or payable even though all or part of the amount so payable may be wholly or partially commuted.... (Emphasis added).

Philadelphia Code § 22–401(4)(a).

Claimant sustained back and shoulder injuries in the course and scope of his employment. Pursuant to a decision of WCJ Donald Poorman dated September 8, 2000, Employer, *inter alia,* was directed to pay Claimant total disability benefits from September 3, 1997 and ongoing. Claimant was found to have an average weekly wage of $880.65 with a corresponding benefit rate of $527.00 per week.

Claimant later filed Reinstatement, Review, and Penalty Petitions alleging that Employer failed to make payment consistent with WCJ Poorman's Decision. Specifically, Claimant alleged that Employer stopped paying workers' compensation benefits following the commencement of his receipt of disability pension benefits as of September 22, 2001.

WCJ Susan E. Kelley granted Claimant's Petitions. She instructed that Claimant's workers' compensation benefits be reinstated as of October 1, 2001. In ruling as she did, WCJ Kelley found that Employer failed to supply Claimant with Notice of Workers' Compensation Benefit Offset, LIBC–761, prior to discontinuing his workers' compensation benefits in light of his receipt of a pension. WCJ Kelley further found Employer failed to establish its contribution, if any, to Claimant's pension benefits. WCJ Kelley also awarded penalties.

The Board affirmed WCJ Kelley's Decision with modification on August 3, 2005. The modification was attributable to an unreasonable contest attorney's fee not relevant to the instant matter. This Court affirmed on March 10, 2006.

Subsequent to the Board's order, but prior to this Court's 2006 Decision, Employer supplied Claimant with a Notice of Workers' Compensation Benefit Offset dated August 19, 2005. Therein, Employer indicated that it intended to deduct $527.00 from Claimant's workers' compensation benefits beginning August 22, 1998 and ending August 7, 2005. Thereafter, the document indicated Claimant would resume receiving $527.00 per week in workers' compensation benefits.

Claimant filed a Review Petition on August 30, 2005. He alleged Employer is inappropriately seeking a pension offset and that any offset is barred by *res judicata.* Claimant further alleged that Employer is improperly seeking to offset his workers' compensation benefits by the full amount of his pension benefits absent evidence that it fully funds his pension benefits. Claimant filed a Penalty Petition alleging that Employer violated the Act by failing to pay benefits when due.

Employer presented the testimony of James Kidwell, Deputy Director of Employer's Board of Pension and Retirements, who agreed that effective September 22, 1998, Claimant became a recipient of a service connected disability pension with a corresponding monthly benefit of $2,292.21. He explained Claimant was receiving $2,289.84 per month in workers' compensation benefits and agreed that his pension was reduced by this amount. According to Mr. Kidwell, Claimant's pension payment, following the offset, was $2.27 per month. He added that Claimant received his full pension payments without reduction through August 4, 2005. Mr. Kidwell agreed that pursuant to the Municipal Pension Plan Funding Standard and Recovery Act (Act 205), some state funding was made available for Employer's

pension fund.[2]

Employer also presented the testimony of Doug Rowe, senior actuary, who prepares documents relating to Employer's contributions to individual pensions for people who are receiving workers' compensation.[3] According to Mr. Rowe, Claimant participates in a plan known as "Plan B." Reproduced Record (R.R.) at 26a. Mr. Rowe received information concerning Claimant's period of employment, 1993 through 1998. He performed various calculations and determined Employer contributed 53.983% to Claimant's monthly pension benefit. On cross-examination, Mr. Rowe agreed Employer received State funding for its pension plans from 1990 through 1997. He stated, however, that "none of that Act 205 State aid is allocated to Plan B." R.R. at 38a. Mr. Rowe explained money was also placed into the General Fund but that it would be difficult to determine where that money went next.

By a decision circulated July 13, 2007, WCJ Olin granted Claimant's Review Petition in part. He concluded that Employer established it contributes 53.983% of Claimant's monthly pension benefits. WCJ Olin determined that Employer was "entitled to offset 53.983 percent of temporary total weekly indemnity benefits due and owing …" Dec. dated 7/13/07, p. 9. WCJ Olin agreed that Employer was not entitled to offset Claimant's workers' compensation payments attributable to any period prior to August 19, 2005, the date Employer supplied Claimant with the Notice of Workers' Compensation Benefit Offset. He concluded, however, that the time period after August 19, 2005 was not subject to WCJ Kelley's December 21,

2004 Decision inasmuch as "[e]very month a pension check is issued, a new credit arises." *Id.* at 7. He added that to forever bar Employer from seeking an offset would improperly provide Claimant with a double recovery. WCJ Olin denied Claimant's Penalty Petition.

Claimant appealed portions of WCJ Olin's Decision. Claimant challenged that WCJ Olin failed to consider the impact of the State's contributions under Act 205. He further contended Employer failed to present sufficient evidence to establish the amount of its offset. Moreover, Claimant alleged that the WCJ failed to consider the effects of Employer's pension ordinance that states pension benefits are to be offset by workers' compensation payments. Claimant also challenged WCJ Olin's failure to find a violation of the Act or to award a penalty.

The Board affirmed on March 18, 2008. Of particular importance, the Board acknowledged Claimant's argument that under Section 22–401(4)(a) of the Philadelphia Code, Employer is entitled to offset Claimant's pension benefits equal to the amount of Claimant's workers' compensation benefits. It did not address this issue, however, stating, "an adjudication of the remedies that may be available to Claimant under that ordinance is not a matter for a workers' compensation tribunal." Op. dated 3/18/08, p. 5.

Claimant filed a request for rehearing with the Board wherein he pointed out that Section 204(a) of the Act provides benefits from a pension plan "received" by an employee shall be credited against his workers' compensation benefits. Claimant explained Mr. Rowe's calculations were

---

2. Act of December 18, 1984, P.L. 1005, *as amended*, 53 P.S. §§ 895.101–895.1001.

3. In instances where the pension plan is a defined benefit plan, the employer must present evidence of its contributions to an employee's pension benefits through actuarial testimony. *Grevy*, 968 A.2d at 839.

that Employer contributed 53.983% of his pension benefits. He stated, however, that at the time WCJ Olin issued his decision, per Mr. Kidwell, he was receiving only $2.27 per month in pension benefits. He contended the Board erred in affirming WCJ Olin's decision to the extent that WCJ Olin found that Employer, as of August 2005 is entitled to reduce Claimant's workers' compensation benefits by 53.983%. Claimant urged to the Board that inasmuch as he received only $2.27 per month in pension benefits, Employer should only be permitted to reduce his compensation benefits by $1.23 per month.

Claimant asserted that as a result of the Board's March 18, 2008 Order, the City reduced his workers' compensation payments to $284.49 per week. He alleged that the amount of pension benefits he was receiving did not change since Employer reduced his workers' compensation benefits. Claimant posited that "[t]his result to Claimant Harvey is one of the reasons why WCJs in Philadelphia and the Workers' Compensation Appeal Board cannot ignore the City of Philadelphia pension ordinance.... Permitting the employer to offset the weekly indemnity benefits paid under the Act by the percentage the pension received by the Claimant is funded by the employer and ignoring the amount of the pension *actually received* by the Claimant is contrary to the clear meaning of Section 204(a)." Pet. For Rehearing, p. 3–4.

The Board granted Claimant's Petition for Rehearing. The Board accepted Claimant's arguments. It modified WCJ Olin's Decision to indicate Employer is entitled to offset Claimant's workers' compensation benefits by an amount equal to 53.983% of the pension benefits Claimant is receiving, or $1.23 per month.

Employer appealed. Employer argues on appeal that Claimant inappropriately requested a rehearing to raise an issue that was not raised in his original appeal to the Board.[4]

■ Section 426 of the Act, 77 P.S. § 871, provides, in relevant part:

The board, upon petition of any party and upon *cause shown*, may grant a rehearing of any petition upon which the board has made an award or disallowance of compensation or other order or ruling, or upon which the board has sustained or reversed any action of a referee; but such rehearing shall not be granted more than eighteen months after the board has made such award, disallowance or other ruling, or has sustained or reversed any action of the referee. (Emphasis added).

■ Section 426 of the Act permits the Board to grant a rehearing as long as the request for rehearing is made within eighteen months of the issuance of its opinion. The Board has broad powers to grant a rehearing and may do so when justice requires. *Cudo v. Hallstead Foundry, Inc.*, 517 Pa. 553, 539 A.2d 792 (1988). The Board's authority to grant a rehearing is to prevent manifest injustice. *Martell v. Workers' Compensation Appeal Board (Doyle Equipment)*, 707 A.2d 242 (Pa.Cmwlth.1998). The authority to grant a rehearing is to be liberally administered in the interest of the claimant. *Cudo*, 517

---

4. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Gentex Corp. v. Workers' Compensation Appeal Board (Morack)*, 975 A.2d 1214 (Pa.Cmwlth.2009). This Court may not disturb a determination to grant or deny a rehearing absent a clear abuse of discretion. *Crankshaw v. Workmen's Compensation Appeal Board (County of Allegheny)*, 120 Pa.Cmwlth.148, 548 A.2d 368 (1988).

Pa. at 558, 539 A.2d at 794. A rehearing has been found appropriate to allow the Board to correct a mistake of law or misapprehension of an issue. *Izzi v. Workmen's Compensation Appeal Board (Century Graphics)*, 654 A.2d 176 (Pa.Cmwlth. 1995). *See also Anderson v. Workmen's Compensation Appeal Board (Myers)*, 51 Pa.Cmwlth.582, 414 A.2d 774 (1980).

Upon review, we find that the Board did not abuse its discretion in granting Claimant's Petition for Rehearing. In Claimant's original appeal documentation filed with the Board following WCJ Olin's Decision, Claimant directly challenged that the WCJ failed to consider the effects of Employer's pension ordinance in denying his Review Petition. The Board declined to address the City's pension ordinance in its March 18, 2008 Opinion believing it was outside its jurisdiction. Claimant requested rehearing within eighteen months of the Board's opinion as required by Section 426 of the Act. He alleged facts that, if true, would show that Employer has not only reduced his pension benefits to almost nothing pursuant to Section 22–401(4)(a) Philadelphia Code, but also reduced his workers' compensation benefits by more than one half consistent with Section 204(a) of the Act and WCJ Olin's order.

■ It is within the Board's authority to grant a rehearing when the interest of justice requires. *Cudo; Martell.* Rehearings should be liberally administered to the benefit of claimants. *Cudo.* Furthermore, rehearings should be granted when the Board has previously misapplied the law or misapprehended an issue. *Izzi; Anderson.* The Board explained that in its initial adjudication, it neglected to consider language in Section 204(a) of the Act that pension benefits, to the extent funded by employer, must be *received* by Claimant before any reduction in workers' compensation benefits can be taken. WCJ

Olin's order calls for a reduction in Claimant's workers' compensation benefits by 53.983%, regardless of the amount of pension benefits received by Claimant. In the Board's view, it misapprehended an issue or misapplied the law. Case law indicates that it was well within the Board's discretion to grant Claimant's request for rehearing. Consequently, we will not disturb the Board's determination granting a rehearing. *Crankshaw.* Further, we reject Employer's contention that Claimant, in its Petition for Rehearing filed with the Board, raised a new issue that was not previously brought to the Board's attention. Claimant raised the issue of the effect of Section 22–401(4)(a) of the Philadelphia Code in relationship to Section 204(a) of the Act in its Notice of Appeal filed with the Board following WCJ Olin's decision.

■ Employer nonetheless argues that WCJ Olin's decision was supported by substantial, competent evidence. It contends it is entitled to offset Claimant's workers' compensation benefits equivalent to an amount of Claimant's pension benefit that was funded by its contributions. Employer notes that it presented credible, competent actuarial testimony to establish its percentage contributions to Claimant's pension benefits. Employer asserts that the Board erred "in holding the offset is to be applied based upon the pension received rather than the workers' compensation benefits received pursuant to the Act." Employer's brief, p. 11.

We reiterate that Section 204(a) of the Act provides the "benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are *received* by an employe shall also be credited against the amount." The Act contemplates that once the percentage of an employer's contribution to an employee's pension is calculated, that portion of the employee's monthly pension

actually received by the employee which is equal to employer's percentage contribution shall be deducted from the claimant's workers' compensation benefits. Indeed, Section 123.9 of the Act 57 Regulations provides instruction on how to calculate an exact weekly offset of a claimant's workers' compensation benefits when he receives a monthly pension. That section provides:

> (a) Offsets of amounts received from pension benefits shall be achieved on a weekly basis. If the employe receives the pension benefit on a monthly basis, the net amount contributed by the employer and received by the employe shall be divided by 4.34. The result is the amount of the weekly offset to the workers' compensation benefit.

34 Pa.Code § 123.9(a).

Putting aside Section 22–401(4)(a) of the Philadelphia Code for the moment, utilizing Section 123.9 of the Act 57 Regulations yields the following calculations. Claimant's monthly pension yielded a benefit of $2,292.21. The net amount contributed by Employer is $1,237.40.[5] Dividing this amount by 4.34 yields $285.12. This is the amount of Employer's weekly offset. Therefore, considering only Section 204(a) of the Act, Claimant's weekly workers' compensation rate would be $241.88 and he would continue to receive his pension in full.[6] Claimant's cumulative monthly income would be $3,341.97.[7]

The Board, in disposing of Claimant's Petition for Rehearing, however, considered the effects of Section 22–401(4)(a) Philadelphia Code. That provision indicates that if an employee "receives" or is "entitled to receive," workers' compensation benefits, his disability pension benefits should be reduced by the amount of such compensation. Mr. Kidwell found Claimant's monthly workers' compensation payments totaled $2,289.84.[8] Therefore, as of August 7, 2005, per Mr. Kidwell, Claimant was receiving $2.27 in monthly pension benefits.[9] Based on Employer's contributions to Claimant's pension plan, Employer funds $1.23 of that monthly pension benefit.[10] Factoring in Section 204(a) of the Act, Employer may then offset Claimant's weekly indemnity benefits by $0.28.[11] This results in weekly compensation payments of $526.72. Claimant's cumulative monthly income would be $2,288.73.[12]

Claimant is certainly better off if we ignore the contents of Section 22–401(4)(a) of the Philadelphia Code. Claimant, however, does not challenge that he is entitled to anything more than the $2,288.73 figure referenced in the preceding paragraph. He makes no contention that the City of Philadelphia's ordinance is contra to that of Section 204(a) of the Act. Claimant further does not question that Employer

---

5. $2,292.21 × .53983 = $1,237.40.

6. $527.00 − $285.12 = $241.88.

7. 4.34 × $241.88 = $1,049.76; $1,049.76 + $2,292.21 = $3,341.97.

8. We calculate that Claimant's monthly workers' compensation payments total approximately $2,287.18. Based on our reading of Section 123.9 of the Act 57 Regulations, we assume there are 4.34 weeks in each month. $527.00 × 4.34 = $2,287.18. Nonetheless, inasmuch as Mr. Kidwell's calculation does not differ significantly from the figure we calculated, and in an effort to not unnecessarily confuse matters further, we will use the figure reached by Mr. Kidwell.

9. $2292.21 − $2,289.84 = $2.37. We again, however, will defer to the figure calculated by Mr. Kidwell and utilized by the Board.

10. $2.27 × .53983 = $1.23

11. $1.23 / 4.34 = $0.28.

12. $526.72 × 4.34 = $2,285.96; $2,285.96 + $2.77 = $2288.73.

should utilize Section 22–401(4)(a) of the Philadelphia Code first and reduce his pension benefits before applying Section 204(a) of the Act and reducing his workers' compensation benefits. Indeed, we note that in *Tiller v. City of Philadelphia Board of Pensions and Retirement,* 806 A.2d 477 (Pa.Cmwlth.2002), this Court stated that recipients of disability pension in the City of Philadelphia are not guaranteed to receive the full amount of their pension, and the pension is to be reduced by the amount of any workers' compensation benefits paid or payable during the period of disability.

Employer, on the other hand, asserts that Claimant's workers' compensation benefits should be reduced by 53.983%. Employer is silent in regard to the fact that in its Notice of Workers' Compensation Benefit Offset, it indicated that as of August 2005, Claimant would receive his full workers' compensation total disability payments of $527.00 per week. It further does not reference that Mr. Kidwell testified that Claimant receives $2.27 per month in pension benefits. These facts are consistent with the application of Section 22–401(4)(a) of the Philadelphia Code. Consequently, we are left with no choice but to presume Employer desires to pay $2.77 in monthly pension benefits and $241.88 in weekly workers' compensation benefits. This would yield a cumulative monthly total of $1,052.53.[13]

In *City of Philadelphia v. Clayton,* 987 A.2d 1255 (Pa.Cmwlth.2009), this Court held that a Claimant is not allowed to retain both disability pension and workers' compensation benefits for the same period of disability. This Court stated to allow such a double recovery would be in contravention with Section 22–401(4)(a) of the

Philadelphia Code. *Id.* Employer, however, wishes to do the opposite. It seeks to reduce Claimant's pension by 100% of the workers' compensation he is entitled to receive *and* reduce Claimant's workers' compensation payments by 53.983% of his pension benefits prior to their reduction.

When the words of a statute are clear and free from all ambiguity, it should be interpreted solely from the plain meaning of its words and the letter of the statute. *Combine v. Workers' Compensation Appeal Board (National Fuel Gas Distrib. Corp.),* 954 A.2d 776 (Pa.Cmwlth. 2008). Further, a fundamental presumption in ascertaining the intention of the General Assembly in the enactment of a statute is that the General Assembly does not intend a result that is absurd, impossible of execution, or unreasonable. *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524 (2003).

The Board found Section 204(a) allows an employer to offset Claimant's workers' compensation benefits only based on the amount of pension benefits received. The amount of pension benefits happened to be $2.77. The plain language of Section 204(a) of the Act supports the Board's determination. To allow Employer to offset his workers' compensation benefits in an amount equal to 53.983% of his full pension even though Claimant did not receive his full pension would yield an absurd result. *Hannaberry HVAC* precludes such an interpretation. Further, to construe Section 204(a) of the Act in the fashion advanced by Employer would run completely contrary to the principle that the Act is designed to benefit injured workers and it is to be liberally construed to effectuate its humanitarian objectives.[14]

---

13. $241.88 × 4.34 = $1,049.76; $1,049.76 + 2.77 = $1,052.53.

14. Section 204(a) of the Act, *as amended,* serves the legislative intent of reducing the

*Good Tire Serv. v. Workers' Compensation Appeal Board (Wolfe),* 978 A.2d 1043 (Pa. Cmwlth.2009).

Based upon our review of the record, we see no error in the Board's determinations. Consequently, its order must be affirmed.

## ORDER

AND NOW, this 17th day of March, 2010, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.

cost of workers' compensation by allowing an employer to avoid paying duplicate benefits for the same loss of earnings. *Andrews,* 948 A.2d at 227. Section 22–401(4)(a) of the Philadelphia Code already took steps to achieve that goal.