# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| David C. Harrison, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 658 C.D. 2016 |
| | : | Argued: April 5, 2017 |
| Workers' Compensation Appeal | : | |
| Board (Commonwealth of | : | |
| Pennsylvania), | : | |
| Respondent | : | |

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


**OPINION**
**BY JUDGE SIMPSON**                    **FILED: June 28, 2017**


This appeal involves review of an employer's notice of workers' compensation benefit offset against an employee's pension benefits. David C. Harrison (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming an order of Workers' Compensation Judge Pamela Briston (WCJ) denying his review offset, reinstatement and penalty petitions. In denying Claimant's petitions, the WCJ upheld the Commonwealth's (Employer) notice of weekly offset amount of $434.34. Claimant contends the WCJ erred in calculating the offset based on the maximum monthly amount of pension benefits he could receive where he opted for a lower monthly rate which provides for a survivor benefit for his spouse in the event of his death. Upon review, we affirm.

# I. Background

In June 2010, Claimant sustained a work injury. Employer accepted the injury in a notice of compensation payable (NCP), which described the injury as a left acetabulum fracture caused by a slip/fall on a carpet. The NCP indicated an average weekly wage (AWW) of $1,273.59 and a weekly compensation rate of $845.00.[1]

## A. Notice of Benefit Offset

In February 2012, Employer issued a notice of workers' compensation benefit offset advising Claimant that based on information it received from the Pennsylvania State Employees' Retirement System (SERS), Employer was entitled to a pro-rata pension offset for benefits Claimant received in the amount of $1,885.03 per month. Reproduced Record (R.R.) at 1a-3a.

Section 204(a) of the Workers' Compensation Act (Act)[2] provides in pertinent part (with emphasis added): "the benefits from a pension plan <u>to the extent funded by the employer</u> directly liable for the payment of <u>which are received by an employee</u> shall also be credited against the amount of the award made under [the Act]." 77 P.S. §71(a) (emphasis added). In addition, Workers' Compensation Bureau (Bureau) regulations governing the application of offset for pension benefits provide (with emphasis added):

---

[1] In April 2014, the parties executed a supplemental agreement expanding the description of the injury to include an aggravation of Claimant's preexisting muscular dystrophy.

[2] Act of June 2, 1915, P.L. 736, <u>as</u> <u>amended</u>, 77 P.S. §71(a).

> (a) Offsets of amounts received from pension benefits shall be achieved on a weekly basis. <u>If the employe receives the pension benefit on a monthly basis, the net amount contributed by the employer and received by the employe shall be divided by 4.34</u>. The result is the amount of the weekly offset to the workers' compensation benefit.

34 Pa. Code §123.9(a).

Calculating the offset based on 34 Pa. Code §123.9(a), Employer determined the weekly offset to be $434.34. Subtracting this amount from Claimant's weekly compensation rate of $845.00 reduced Claimant's weekly payment to $410.66. R.R. at 3a.[3]

## B. Claimant's Petitions

In February 2014, Claimant filed a review offset petition, a penalty petition and a reinstatement petition. Claimant alleged Employer improperly took an offset credit for an overpayment. R.R. at 9a. Claimant also sought a review of Employer's calculation of the offset. Id.

---

[3] Employer's notice of offset also recognized that SERS approved Claimant's pension retroactively to begin on December 1, 2010. As such, Claimant received 67 and 3/7 weeks of pension benefits prior to March 16, 2012, resulting in an overpayment of $29,286.92. To recoup the overpayment, Employer suspended Claimant's benefits for 71 and 2/7 weeks from March 17, 2012 through July 28, 2013. R.R. at 3a.

## C. Before the WCJ

Before the WCJ, Employer presented deposition testimony from three witnesses. In her first three findings of fact, the WCJ reviewed Employer's evidence.

Sara Westhaver (Claims Representative), a claims representative for Inservco Insurance Services (Inservco), testified that Inservco replaced CompServices as Employer's third-party administrator. When Inservco learns a Commonwealth employee retired and is receiving pension benefits, Inservco obtains pension information from SERS, calculates the appropriate offset and issues the appropriate LIBC (Bureau) forms. WCJ Op., 2/17/15, Finding of Fact (F.F.) No. 1.

Based on her review of the file, Claims Representative determined Claimant returned a Bureau form to Inservco's predecessor, CompServices, in December 2011 indicating that he was receiving pension benefits. Claimant provided the gross and net amount of his pension benefits. On February 22, 2012, CompServices issued the notice of offset to Claimant. F.F. No. 1.

In particular, Claims Representative testified the notice of offset indicated the Employer-funded amount of Claimant's monthly pension benefit to be $1,885.03. F.F. No. 1; Dep. of Sara Westhaver, 10/2/14 (Westhaver Dep.), at 19-20; R.R. at 3a, 103a-04a. Pursuant to 34 Pa. Code §129.3(a), that amount is divided by 4.34, yielding a weekly offset of $434.34. F.F. No. 1; Westhaver Dep., at 19-20; R.R. at 103a-04a. On cross-examination, Claims Representative

4

acknowledged the only role a third-party administrator plays in calculating the offset is to divide the monthly offset amount provided by SERS so that a weekly offset can be determined. F.F. No. 1; Westhaver Dep., at 20-21; R.R. at 105a-06a.

SERS's Director of Benefit Administration, Susan Hostetter (SERS Benefits Director) testified regarding the manner in which SERS calculates the Employer-funded part of Claimant's pension. F.F. No. 2. SERS Benefits Director testified that Claimant had various pension payment options he could select. Some options provide a greater monthly payout than others. However, options with a lower monthly payout offer other benefits such as payments to a spouse should the retiree predecease the spouse. Id.

However, with regard to calculating the pension offset in workers' compensation cases, SERS does not take into consideration which payment option the participant chooses. Rather, SERS always calculates the offset based on the participant's maximum single life annuity (MSLA). This is the maximum amount an injured employee could elect to receive each month. F.F. No. 2.

In the present case, SERS calculated Claimant's MSLA as $3,742.51 per month. However, Claimant elected a different payment option which paid him a gross monthly amount of $3,434.16. After deductions, Claimant received an initial net monthly payment of $3,053.01. F.F. No. 2.

Employer also submitted the testimony of Brent A. Mowery (SERS Actuary), an actuary employed by SERS and affiliated with a company known as

the Hays Group.  F.F. No. 3.  He explained that SERS has a defined-benefit plan. In such a plan, all of the participants' contributions are comingled with Employer's contributions.  Id.  The combined amount is then invested.  Employees do not have individual accounts.  Id.

SERS Actuary explained that in determining the extent to which the Commonwealth funds an employee's pension, it is necessary to determine how much money will be needed to fund the employee's pension for the rest of his life. F.F. No. 3; Dep. of Brent A. Mowery, 10/15/14 (Mowery Dep.), at 10; R.R. at 121a.  This determination is an "actuarial calculation."  F.F. No. 3; Mowery Dep. at 10; R.R. at 121a.  Once that determination is made, it is possible to calculate the amount the employee contributed over the course of his life.  F.F. No. 3.  When the employee's contribution is deducted from the total amount of funding needed, the amount the Commonwealth contributed to the pension can be determined.  Id.

Here, SERS Actuary testified he determined Claimant's MSLA to be $3,742.51 per month.  F.F. No. 3; Mowery Dep. at 18; R.R. at 129a.  By using Claimant's MSLA, remaining life expectancy, and applying an actuarial factor of 8.7045, SERS Actuary determined $390,920.14 was needed to fund Claimant's pension.  F.F. No. 3; Mowery Dep. at 18-19; R.R. at 129a-30a.  Subtracting Claimant's contributions and investment earnings, $194,021.33, SERS Actuary calculated that the remaining amount necessary to fund the pension, $196,898.81, represents Employer's contribution.  F.F. No. 3.

6

SERS Actuary observed that the Employer-funded portion of Claimant's entire pension, $196,898.81, constitutes 50.368039 percent of the total value of Claimant's pension. F.F. No. 3. Therefore, the Employer-funded portion of Claimant's monthly MSLA is calculated as 50.368039 percent of $3,742.51, which amounts to $1,885.03. F.F. No. 3; Mowery Dep. at 33-34; R.R. at 144a-45a.

Notably, Claimant did not present any testimony, expert or otherwise, on his own behalf. F.F. No. 4. As such, Claimant failed to present any expert actuarial testimony to challenge Employer's actuarial calculations. Id.

Based on the evidence presented, the WCJ determined Claimant failed to meet his burden of proof in his review offset, reinstatement and penalty petitions. F.F. No. 5. In her decision, the WCJ accepted the testimony of Claims Representative, SERS Benefits Director and SERS Actuary as credible and convincing with respect to the calculation of Employer's offset. F.F. No. 5a. In particular, the WCJ found their calculations of the pension offset to be sound. F.F. No. 5b. The WCJ also determined the methodology described by SERS Actuary accurately calculated the Employer-funded portion of the SERS defined-benefit plan. Id.

Therefore, the WCJ found Employer was entitled to a weekly offset of $434.34 resulting in a weekly compensation benefit of $410.66. F.F. No. 5c.

7

Pursuant to 34 Pa. Code §123.4(a), Employer is entitled to this offset for the duration of Claimant's collection of his pension benefit. F.F. No. 5d.[4]

---

[4] The WCJ next addressed several issues Claimant raised in his Proposed Findings of Fact and Conclusions of Law. These issues are <u>not</u> at issue in the current appeal, and they are recounted only for the sake of completeness.

Claimant first argued Employer's actuarial assumptions failed to consider the unique circumstances in his case. <u>See</u> F.F. No. 6. To that end, the parties' supplemental agreement described Claimant's work injury as including an aggravation of his preexisting muscular dystrophy. Claimant thus asserted Employer bore the burden of producing medical evidence showing his life expectancy would not be adversely affected by this serious and sometimes fatal disease. <u>Id.</u>

In rejecting Claimant's argument, the WCJ reasoned it would be expensive and burdensome to place the requirement on Employer to have each worker evaluated for purposes of life expectancy when calculating its share of the pension. F.F. No. 6(I)(b). The WCJ also credited SERS Actuary's testimony that the larger size of the group of retirees, the more accurate the life expectancy tables are because the deviations tend to cancel out. F.F. No. 6(I)(c).

The WCJ addressed another issue raised by Claimant. Claimant contended Employer violated the Act by taking a credit against pension benefits Claimant received prior to the date Employer filed the notice of offset. In rejecting Claimant's contention, the WCJ recognized that 34 Pa. Code §123.4 explicitly permits a retroactive offset or recoupment. <u>City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wright)</u>, 90 A.3d 801 (Pa. Cmwlth. 2014). F.F. No. 6(III)(a). In short, the WCJ observed that "Section 204(a) and its regulations expressly authorize an employer to do a retrospective offset as needed to recover overpaid workers' compensation benefits." <u>Id.</u> The WCJ also found there was no delay attributable to Employer which led to the overpayment. F.F. No. 6(III)(b).

Accordingly, the WCJ determined Employer is entitled to a weekly offset of Claimant's workers' compensation benefits due to his simultaneous receipt of pension benefits, which are partially Employer-funded. Conclusion of Law (C.L.) No. 1. Therefore, the WCJ reduced Claimant's weekly benefits to $410.66. <u>Id.</u>

The WCJ also determined Employer was entitled to an offset for overpayment in the amount of $29,286.92. C.L. No. 2. Because Employer did not cause a delay resulting in the overpayment, the WCJ determined Employer was entitled to collect the full offset amount for the overpayment. C.L. No. 3. Therefore, the WCJ denied Claimant's review offset and reinstatement petitions. C.L. No. 4.

Further, because a retroactive offset is permitted under Section 204(a) of the Act and its regulations, the WCJ found no violation of the Act and denied Claimant's petition for penalties. C.L. No. 5.

Also, Claimant asserted Employer failed to prove SERS properly calculated the offset against the net amount of benefits he received each month as required by the Act and its applicable regulations. In rejecting this argument, the WCJ noted an employer's offset calculations determine the funding needed to be provided by the employer. F.F. No. 6(II)(b). Although Claimant elected a lesser amount in order to preserve a survivor benefit for his spouse, the WCJ found this is still a benefit to Claimant as an employee. Id. As such, to calculate the offset as Claimant requested would not take into account either the total amount required to be funded by Employer in order to pay the survivor benefit to Claimant's wife. F.F. No. 6(II)(c).

The WCJ denied Claimant's petitions. On appeal, the Board affirmed. In its opinion, the Board noted that even though Claimant took a lower paying option than the MSLA standard payment, Claimant's decision did not impact the amount of money required to fund his pension for the remainder of his life and his wife's life. Bd. Op., 4/7/16, at 6, 7. Claimant petitions for review.[5]

## II. Discussion

### A. Argument

Claimant contends the Board erred in affirming the WCJ's decision that Employer's offset should be calculated on the gross amount of the MSLA payment rather than the lesser amount Claimant actually received. To that end,

---

[5] Our appellate standard of review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

Claimant asserts Section 204(a) of the Act provides "the benefits from a pension plan to the extent funded by the employer directly liable for the payment of <u>which are received by an employee</u> shall also be credited against the amount of the award made under [the Act]." 77 P.S. §71(a) (emphasis added).

Similarly, Bureau regulations provide: "Workers' compensation benefits otherwise payable shall be offset by the <u>net amount an employe receives in pension benefits</u> to the extent funded by the employer directly liable for the payment of workers' compensation." 34 Pa. Code §123.8(a) (emphasis added). "If the employe receives the pension benefit on a monthly basis, <u>the net amount contributed by the employer and received by the employe</u> shall be divided by 4.34." 34 Pa. Code §123.9(a) (emphasis added). "The result is the amount of the weekly offset to the workers' compensation benefit." <u>Id.</u>

In support of his position, Claimant cites <u>City of Philadelphia Gas Works v. Workers' Compensation Appeal Board (Amodei)</u>, 964 A.2d 963 (Pa. Cmwlth. 2009), where this Court, in an *en banc* decision, held that a pension offset was based on the net amount the claimant actually received. In reviewing Section 204(a) of the Act, we stated:

> The statutory language permitting an employer to offset workers' compensation paid to an employee by the amount of pension benefits the employee 'received' does not specify whether the credits allowed are to be calculated on the gross or net amount received by the employee. However, pursuant to legislative directive, this information is supplied by regulation.

Philadelphia Gas Works, 964 A.2d at 965. We then noted the language in 34 Pa. Code §123.8(a) that workers' compensation benefits otherwise payable shall be offset by the *net amount* an employe receives in pension benefits to the extent funded by the employer directly liable for the payment of workers' compensation.

Claimant also cites our decision in City of Philadelphia v. Workers' Compensation Appeal Board (Harvey), 994 A.2d 1 (Pa. Cmwlth. 2010), where a City of Philadelphia (City) employee sustained a work injury and began receiving workers' compensation benefits at the rate of $527.00 per week. Thereafter, the employee began receiving a disability pension from the City. Had he not been receiving workers' compensation benefits, the retired employee would have been entitled to $2,292.21 per month in pension benefits.

However, pursuant to Section 22-401(4)(a) of the City Code, if an injured employee receiving workers' compensation benefits becomes eligible to receive pension benefits, the pension benefits are required to be offset against the workers' compensation benefits. Because the claimant received $2,289.84 per month in workers' compensation benefits, his pension benefits were reduced to $2.27 per month.

Nevertheless, the City, pursuant to 34 Pa. Code §123.9(a), sought an additional offset based on the fact it funded 53.983% of the claimant's pension. As such, the City sought to deduct $285.12 from Claimant's weekly workers' compensation benefit of $527.00, which would lower claimant's weekly workers' compensation rate to $241.88. In other words, the City wanted to reduce

11

Claimant's pension benefits by 100% of Claimant's workers' compensation benefits and then reduce Claimant's workers' compensation benefits by 54% of Claimant's pension benefits *before* they were reduced under Section 22-401(4)(a) of the City Code.

On appeal, the Board decided that in view of the reduction of Claimant's pension payment under the offset in Section 22-401(4)(a) of the Philadelphia Code, Claimant *received* only $2.27 per month in pension benefits. Based on the City's 53.983% contribution to Claimant's pension benefits, this reduced Claimant's pension payments by $1.23 per month. Therefore, the Board determined the City could offset Claimant's weekly benefits by $0.28. On further appeal, this Court affirmed, reasoning:

> The plain language of Section 204(a) of the Act supports the Board's determination. To allow [the City] to offset [the claimant's] workers' compensation in the amount equal to 53.983 of his full pension *even though [the claimant] did not receive his full pension* would yield an *absurd* result. [Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.), 884 A.2d 524 (Pa. 2003)] precludes such an interpretation.

Harvey, 994 A.2d at 8 (emphasis in italics added).

On appeal, Claimant argues that he does not dispute the credible testimony of Employer's witnesses regarding the calculation of the Employer-funded amount of the pension. Nonetheless, Claimant asserts SERS Actuary erred in taking an offset in the amount of $1,885.03 per month because that amount was

12

based on the premise that Claimant was receiving the gross MSLA of $3,742.51 per month ($3,742.51 x 50.368039% = $1,885.03).

As noted above, Claimant did not elect to receive the MSLA option. Rather, Claimant opted for a lower monthly payout which also provided for pension payments to his spouse should he predecease her. As such, Claimant actually received $3,053.11 per month, approximately $700 per month less than the gross MSLA option. Therefore, Claimant argues, Employer should have been entitled to a monthly offset of $1,537.79 ($3,053.11 x 50.368039% = $1,537.79).

In short, Claimant argues Employer's method of calculating the pension offset is contrary to the plain language of the Act, the pertinent Bureau regulations and the applicable case law. He asserts that all relevant sources mandate that Employer is only entitled to the *net amount he actually receives* each month. Therefore, Claimant argues the Board erred in holding Employer could apply the offset against the amount he could have received if he elected to receive the single life annuity.

## B. Analysis

To begin, we note that even though Claimant filed the offset review petition, Employer, as the party seeking the pension offset and a change in the *status quo*, bears the burden of proof regarding its entitlement. Dep't of Pub. Welfare/Polk Ctr. v. Workers' Comp. Appeal Bd. (King), 884 A.2d 343 (Pa. Cmwlth. 2005). In a defined-benefit plan, credible actuarial evidence is sufficient to establish the extent to which an employee's pension benefits are employer-

13

funded. Dep't of Pub. Welfare v. Workers' Comp. Appeal Bd. (Harvey), 993 A.2d 270 (Pa. 2010). Here, Employer presented testimony from Claims Representative, SERS Benefits Director and SERS Actuary, which the WCJ accepted as credible with regard to the calculation of the offset amount for Claimant's pension. F.F. No. 5a.

SERS Actuary testified he determined Claimant's MSLA to be $3,742.51 per month. F.F. No. 3. Multiplying that amount by an actuarial factor of 8.7045 yielded a total funding amount of $390,920.14. This is the amount needed to fund Claimant's pension. F.F. No. 3. Of that amount, SERS Actuary determined Claimant contributed $194,021.33 and Employer contributed $196,898.81 or 50.368039%. Id.

Based on these calculations, SERS Actuary explained Employer partially funds Claimant's pension in the amount of $22,620.35 per year or $1,885.03 per month. Id. Pursuant to 34 Pa. Code §129.3, the $1,885.03 per month is divided by 4.34, which yields a weekly offset of $434.34. F.F. No. 1.

Critical for our analysis, under Section 5705 of the State Employees' Retirement Code (Retirement Code), 71 Pa. C.S. §5705, an eligible beneficiary upon retirement could choose to receive either a MSLA or a *reduced annuity certified by the actuary to be actuarially equivalent to the MSLA* in accordance with one of four options. Hoffman v. State Emp. Retirement Bd., 915 A.2d 674 (Pa. Cmwlth. 2006). Relevant here, Section 705(a) of the Retirement Code provides the following options:

14

**(1) Option 1.**—<u>A life annuity to the member with a guaranteed total payment equal to the present value of the [MSLA]</u> on the effective date of retirement with the provision that, if, at his death, he has received less than such present value, the unpaid balance shall be payable to his beneficiary.

**(2) Option 2.**—A joint and survivor annuity payable during the lifetime of the member with the full amount of such annuity payable thereafter to his survivor annuitant, if living at his death.

71 Pa. C.S. §5705(a) (emphasis added).

Claimant did not elect to receive the life annuity Option 1. Rather Claimant opted for a lower monthly payout under Option 2, which also provided for a *full amount* survivor benefit for his spouse should he predecease her. Claimant actually received, after deductions, $3,053.11 per month. This is approximately $700 per month less than the MSLA option. Therefore, Claimant argues, Employer should have been entitled to a monthly offset of $1,537.79 ($3,053.11 x 50.368039% = $1,537.79).

We disagree. Section 204(a) "focuses on the extent to which benefits are funded by the employer." <u>Harvey</u>, 993 A.2d at 281. SERS Actuary testified Claimant selected the "joint and one hundred percent survivor benefit." Mowery Dep. at 29; R.R. at 140a. Although Claimant will receive a somewhat lower benefit per month, the reduction takes into account the fact that this amount will be payable to his wife until her death if he predeceases her. Mowery Dep. at 29-30; R.R. at 140a-41a. Therefore, in exchange for a reduction in the amount of pension payments to himself, Claimant added his wife as a joint annuitant with a right of

15

survivorship. Although Claimant himself receives a reduced annuity payout under Option 2, the remainder of his monthly MSLA will fund the survivor benefit for his spouse. Thus, Claimant's pension benefit under Option 2 remains the actuarial equivalent to his MSLA. <u>Hoffman</u>.

As can been seen from our case descriptions above, the cases relied upon by Claimant do not address the concept of actuarial equivalency. Therefore, they are not helpful in resolving the case before us.

In contrast, SERS Actuary explained in detail why payment options have no impact on calculating funding of a pension. The Actuary testified:

> If an individual opts for a joint and survivor annuity it brings a second life into the picture, typically the spouse, and when that occurs there is a calculation done to determine what would be payable to the individual instead of the level of benefit that [he was] entitled to [through his] MSLA, that is, some lower amount of benefit would be paid than had been presented as available for the single life because under these joint and survivor forms, if the original member were to predecease [his] spouse benefits continue, sometimes at the same level as was payable to the member, sometimes at 50 percent of the level of benefits payable to the member.
>
> But, <u>regardless of what level of benefit continues to the spouse when the member predeceases the spouse, I think you can appreciate that in order to maintain the value of the benefit that was originally available to the participant there is a calculation that we call an actuarial equivalent conversion</u>.
>
> And, the word actuarial equivalent is basically to say that <u>by factoring in the age and gender of the spouse</u>

16

> and performing a calculation that takes into account that two lives are going to probably live longer than one on average, there is a reduction applicable to the MSLA to bring the benefit that would be payable under this two life arrangement to a level that's somewhat lower and factors in the greater average duration of payments that will be made once the second life is brought into the picture.
>
> Now, because these calculations are made through an actuarial equivalent conversion we aren't dealing with any different total value of benefits to which the participant and his spouse are entitled versus what the participant himself was entitled to.

Mowery Dep. at 21-22; R.R. at 132a-33a.

It is noteworthy that this expert testimony on actuarial equivalent conversion was unchallenged by Claimant, and it was accepted by the fact-finder. Indeed, the Actuary was not asked any questions on cross-examination that pertained to the actuarial equivalent conversion for different pension payouts, and Claimant did not offer his own evidence on the issue. Under these circumstances, this accepted expert testimony is controlling, and it cannot now be challenged by Claimant under the guise of a legal issue over gross/net payments.

Ultimately, the WCJ made the following findings:

> b. [Employer's] calculation considers the funding needed to funded by [Employer]. It is noted that [C]laimant elected a lesser amount in order to preserve, presumably, an option for payment for a spouse, which is a benefit to the employee. As such, I accept [Employer's] calculations of the offset.

17

> c. To calculate the offset as requested by [C]laimant would not take into account the amounts required to be funded by [Employer], and the benefits to [C]laimant's spouse.

F.F. No. 6(II)(b),(c) (emphasis added).

Claimant states he does not challenge either the MSLA calculation of $3,742.51 per month or the Employer-funded portion of his pension as 50.368039%. Therefore, the WCJ properly determined the Employer-funded portion of Claimant's monthly MSLA or pension benefit to be $1,885.03. See F.F. No. 6(II)(a). Dividing this amount by 4.34, as required by 34 Pa. Code §123.9(b), results in a monthly offset of $434.34 per week.

We discern no error or abuse of discretion in the WCJ's determination that Claimant's joint and survivor annuity, which includes a full amount survivor annuity payable to his wife should Claimant predecease her, constitutes a benefit Claimant constructively received for purposes of the Section 204(a) pension offset. As SERS Actuary explained, where a participant selects the joint and survivor annuity, that brings a second life into the picture. Mowery Dep. at 21; R.R. at 21a; R.R. at 132a. A calculation factoring the age and gender of the spouse must be made. Because "two lives are going to probably live longer than one on average," the monthly amount of pension benefit paid to the participant will be lower to factor "in the greater average duration of payments …." Id. Importantly, as SERS Benefits Director testified, no matter what option the participant chooses, the value of his benefit will be actuarially equivalent to his MSLA. F.F. No. 2; Dep. of Susan Hostetter, 10/2/14 (Hostetter Dep.), at 32-33; R.R. at 68a-69a.

18

Therefore, the total amount of funding needed is the same under both the single life annuity and joint and survivor annuities. Id. Mowery Dep. at 22; R.R. at 21a; R.R. at 133a. SERS Benefits Director explained: "What we need to set aside is a[n] amount that funds the maximum amount of the benefit. So we fund for each member on the [MSLA], the maximum amount they [sic] can receive." Hostetter Dep. at 32; R.R. at 67a.

Consequently, we reject Claimant's contention that Employer is only entitled to an offset based on the monthly net amount of pension benefits physically received by Claimant. Although Claimant is receiving a reduced payment under this option, Employer does not receive a corresponding reduction in the amount it must fund Claimant's pension benefits. Rather, the reduction in Claimant's payment is necessary to enable Employer to provide funding for a survivor benefit for Claimant's wife. Thus, because Employer is partially funding both the annuity to Claimant and the survivor annuity for Claimant's wife, Employer is entitled to an offset for Claimant's MSLA regardless of the monthly amount paid solely to Claimant.[6] Harvey.

In sum, pursuant to Section 204(a) of the Act and 34 Pa. Code §123.8(a), an employer is entitled to a workers' compensation offset for pension benefits an employee receives *to the extent funded by the employer*. Here, Claimant voluntarily chose a joint and survivor annuity which will require Employer to fund both his and his wife's annuity benefits in an amount equivalent

---

[6] As noted above, a joint and survivor annuity under Option 2 must be certified to be actuarially equivalent to the value of the MSLA. 71 Pa. C.S. §5705(a); Hoffman.

19

to Claimant's MSLA. 71 Pa. C.S. §5705(a); <u>Hoffman</u>. As such, it would be improper to deny Employer an offset for the full amount that it funded Claimant's MSLA. Section 204(a) of the Act; <u>Harvey</u>.

### C. Taxes

As a final matter, we address Claimant's contention that the workers' compensation offset must be calculated based on his net MSLA after taxes rather than the gross MSLA of $3,742.51 per month. The Pennsylvania Association for Justice (Association), as *amicus curiae*, cites <u>Philadelphia Gas Works</u>, and points out that while pension benefits may be taxed, workers' compensation benefits are not taxable. Therefore, if a claimant received $200 per week in pension benefits and paid $50 in taxes on those benefits, he would receive only $150 per week. However, if his employer is entitled to a workers' compensation offset of $200 per week, the claimant would lose $50 per week in workers' compensation to which he was legally entitled.

Similarly, Claimant, also citing <u>Philadelphia Gas Works</u>, argues that the offset must be calculated based on the *net amount* a claimant actually receives. Therefore, Claimant maintains the WCJ erred in approving the pension offset based on the gross MSLA of $3,742.51 per month.

Again, we disagree. In our previous *en banc* decision in <u>Philadelphia Gas Works</u>, we stated:

> With respect to the court's concern that applying the offset to the net amount of benefits would result in administrative difficulties, we note that the regulations

20

expressly provide, in the alternative, that an employer may calculate the offset based on the gross amount of the other benefit received by the employee, *subject to a correction once the employee notifies the insurer he has paid the required tax*. Specifically, 34 Pa. Code §123.4(f) (emphasis added) provides:

> When Federal, State or local taxes are paid with respect to amounts an employee receives in unemployment compensation, Social Security (old age), severance or pension benefits, the insurer shall repay the employee for amounts previously offset, and paid in taxes, from workers' compensation benefits, when the offset was calculated on the pretax amount of the benefit received. To request repayment for amounts previously offset and paid in taxes, the employee shall notify the insurer in writing of the amounts paid in taxes previously included in the offset.

Phila. Gas Works, 964 A.2d at 966 (italics in original).


As we observed in Philadelphia Gas Works, application of the offset to the net amount of the claimant's pension benefit for employers could result in administrative difficulties. Therefore, Employer may calculate the offset based on the gross amount of the MSLA subject to correction reimbursement under 34 Pa. Code §123.4(f). Id. Here, SERS Benefits Director testified that a participant may elect to have taxes taken out. Hostetter Dep. at 33; R.R. at 69a. This can be changed at any time. Id. SERS Benefits Director further testified that when Claimant initially retired, he chose to have taxes taken out. Id. As such, Claimant is entitled to reimbursement from Employer for taxes paid. 34 Pa. Code §123.4(f).

21

## III. Conclusion

For the above reasons, we discern no error or abuse of discretion in the WCJ's determination that Employer established its entitlement to a weekly workers' compensation offset of $434.34 under 34 Pa. Code §129.3(a) based on Claimant's simultaneous receipt of pension benefits which have a certified actuarial equivalent value of $3,742.51 per month and are partially Employer-funded in the amount of $1,885.03 per month. Accordingly, the order of the Board upholding the WCJ's denial of Claimant's review offset, reinstatement and penalty petitions is affirmed.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David C. Harrison,            :
           Petitioner       :
           :
           v.            :    No. 658 C.D. 2016
           :
Workers' Compensation Appeal    :
Board (Commonwealth of         :
Pennsylvania),               :
           Respondent    :

## **O R D E R**

**AND NOW**, this 28th day of June, 2017, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

<br>

                _____
                ROBERT SIMPSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David C. Harrison,                          :
                                            :
                        Petitioner          :  No. 658 C.D. 2016
                                            :  Argued:  April 5, 2017
            v.                              :
                                            :
Workers' Compensation Appeal                :
Board (Commonwealth of                      :
Pennsylvania),                              :
                                            :
                        Respondent          :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE JULIA K. HEARTHWAY, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge


DISSENTING OPINION
BY JUDGE WOJCIK                                    FILED:  June 28, 2017


            Respectfully, I dissent.  In his appeal from the order of the Workers'
Compensation Appeal Board (Board), David C. Harrison (Claimant) argues that
the workers' compensation judge (WCJ) erred in calculating the Commonwealth of
Pennsylvania's (Employer) offset against his workers' compensation benefits
based on the maximum amount of pension benefits Claimant could receive, instead
of the amount of pension benefits he does receive.  I agree.

Section 204(a) of the Workers' Compensation Act (Act)[1] allows an employer an offset for the payment of pension benefits that are received by the employee, to the extent the pension benefits are funded by the employer. It states:

> [T]he benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation *which are received by an employe* shall also be credited against the amount of the award made under [the Act].

77 P.S. §71(a) (emphasis added). In setting forth the critical words at issue in this case, "are received," the legislature employed the *simple present tense* (passive voice).[2] Likewise, the regulation at 34 Pa. Code §123.8(a) (emphasis added), which allows an offset for "the net amount *an employee receives* in pension benefits," is stated in the present tense. Most importantly, the regulation at 34 Pa. Code §123.8(c) (emphasis added) expressly states that "[t]he offset *may not apply to pension benefits to which an employee may be entitled, but is not receiving.*" The relevant language allows an offset based on a present occurrence, and it specifically prohibits applying an offset based on speculative future circumstance. Consequently, this Court cannot affirm the calculation of Employer's offset from Claimant's workers' compensation benefits *based on pension benefits Claimant does not receive* without disregarding the plain language of Section 204(a) of the Act and violating the regulation authorizing the offset.

Preliminarily, I note that in order to calculate the amount of Claimant's weekly pension payment, the Majority's rationale relies on the same actuarial evidence used to determine Employer's contributions to his pension.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §71(a).

[2] https://owl.english.purdue.edu/owl/resource/601/02 (last visited June 12, 2017).

However, these actuarial calculations are intended to be applied *after, not before*, the amount of a claimant's weekly pension benefit is determined. In contrast to the Majority's analysis, the amount of the benefit a claimant receives under a defined benefit plan is the *starting* point in calculating the employer's contribution for purposes of arriving at the offset figure: the amount the claimant is entitled to receive is established by factors such as his salary and years of service; that figure is multiplied by a factor, determined actuarially, and the result is the amount of the employer's contribution. Here, the Majority would use the same actuarial factor to determine both ends of the *same* equation, rendering the analysis mathematically invalid. Moreover, because the calculations used to determine an employer's contributions to a claimant's pension are based on actuarial *assumptions*, such as a claimant's life expectancy, use of the same data to arrive at a fictitious amount for a claimant's payment *under a defined benefit plan* is unsupported by law or logic. While actuarial evidence is appropriately used to resolve disputes concerning the extent to which an employer has funded a claimant's pension benefit, this appeal is not a dispute over the amount of Employer's contributions. Therefore, I submit that actuarial evidence concerning the method used to calculate Employer's contributions is entirely irrelevant to the question before the Court.

We must be mindful that this is a workers' compensation case, not a pension dispute. The purpose of the offset is *not* to preserve a pension fund but, rather, to control the cost of workers' compensation. As we noted in *Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 911 A.2d 225 (Pa. Cmwlth. 2006):

> In 1996, the legislature*, attempting to combat the increasing costs of workers' compensation in Pennsylvania,* amended Section 204(a) of the Act to

MHW - 3

allow employers an offset against workers' compensation benefits for social security, severance, and pension benefits simultaneously received by an employee.

* * *

Amended Section 204(a) serves *the legislative intent of reducing the cost of workers' compensation* by allowing an employer to avoid paying duplicate benefits for the same loss of earnings . . . . Similarly, Section 204(a) implicitly recognizes that *public policy bars an employer from utilizing an employee's own retirement funds to satisfy its workers' compensation obligations* . . . .

*Id.* at 227-28 (emphasis added) (citations omitted).[3, 4]

I suggest that our decision in *Philadelphia Gas Works v. Workers' Compensation Appeal Board (Amodei)*, 964 A.2d 963, 967 (Pa. Cmwlth. 2009),

---

[3] *See also*, *Allegheny Ludlum Corp. v. Workers' Compensation Appeal Board (Bascovsky)*, 977 A.2d 61, 67-68 (Pa. Cmwlth. 2009).

[4] In *Hensal*, we also recognized that the legislature had not included in Section 204(a) any method of calculating the offset. "In response to this omission, the Bureau adopted 34 Pa. Code §123.8." *Allegheny Ludlum Corp.*, 977 A.2d at 68. In its entirety, the regulation states:

(a) Workers' compensation benefits otherwise payable shall be offset by the net amount an employe receives in pension benefits to the extent funded by the employer directly liable for the payment of workers' compensation.

(b) The pension offset shall apply to amounts received from defined-benefit and defined-contribution plans.

(c) The offset may not apply to pension benefits to which an employe may be entitled, but is not receiving.

(d) In calculating the offset amount for pension benefits, investment income attributable to the employer's contribution to the pension plan shall be included on a prorata basis.

34 Pa. Code §123.8.

explaining that an employer is entitled to a credit only for the *net* benefit received by an employee, offers guidance in this matter:

> Although the legislature did not specify whether an offset should be based on the "net" or "gross" amount of these benefits, we observe that allowing a credit for the gross amount of other benefits results in a loss of workers' compensation benefits to which a claimant is statutorily entitled. In view of an injured employee's entitlement to receive workers' compensation without any tax reduction, we will not rely on the absence of specific direction to conclude that the language in Section 204(a) of the Act, granting employers a credit for certain taxable benefits received by the employee during a period of work-related disability, reflects a legislative intent to reduce the employee's entitlement to workers' compensation *beyond the post-tax amount* of those other benefits *actually received by the employee and available for his or her use*. Indeed, in providing background for its regulations, the Bureau states, "[o]n June 24, 1996, Governor Tom Ridge signed into law Act 57, which substantially amended the [A]ct. The amendments are intended to combat the rising costs of workers' compensation in this Commonwealth *while protecting the right of employes to be adequately compensated for their work-related injuries.*" 28 Pa. B. 329 (Jan. 17, 1998). (Emphasis added.)

*Amodei*, 964 A.2d at 967.

Consistent with the above analysis, even if Section 204(a) were ambiguous, and even if the regulation at 34 Pa. Code §123.8(c) did not exist, this Court should not infer a legislative intent to reduce a claimant's entitlement to workers' compensation beyond the amount of the pension benefit the claimant

MHW - 5

presently receives absent an express authorization. *Id.*[5] To the extent the legislature did not intend the language of Section 204(a) or 34 Pa. Code §123.8(c) to apply where a claimant receives less in pension benefits than he is entitled to, deferring receipt of such funds for his later benefit or for the benefit of another, I suggest that clarification of the law is appropriately achieved through the legislative or the rule-making process.

Finally, I would be faithful to the principles repeated by our Supreme Court in *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.),* 834 A.2d 524 (Pa. 2003):

> [W]e take seriously this Court's settled recognition that '[o]ur basic premise in workmen's compensation matters is that the [Act] is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives.' *Peterson v. Workmen's Compensation Appeal Bd. (PRN Nursing Agency),* [597 A.2d 1116, 1120] (Pa. 1991) (collecting cases). Accordingly, 'borderline interpretations of the [Act] are to be construed in the injured party's favor.' *Harper & Collins v. Workers' Compensation Appeal Bd. (Brown),* [672 A.2d 1319, 1321] (Pa. 1996), citing *Turner v. Jones & Laughlin Steel Corp.*, [389 A.2d 42, 47] (Pa. 1978).

*Hannaberry*, 834 A.2d 528.

---

[5] *Compare* 34 Pa. Code §123.9 (application of offset for pension benefits) which addresses, inter alia, an employee's receipt of pension benefits in the form of a lump sum payment.

For all of the above reasons, I would apply the statute and regulations as written, and allow Employer an offset that is calculated on the amount of the pension payment Claimant presently receives.  Accordingly, I would reverse the Board's order.

_____
MICHAEL H. WOJCIK, Judge

Judge Cosgrove joins in this dissent.